# STATE OF MICHIGAN

# COURT OF APPEALS

JANET WOLF,

              Plaintiff-Appellant,

v

MICHAEL J. MAHAR,

              Defendant-Appellee.

FOR PUBLICATION
November 18, 2014
9:05 a.m.

No. 310479
Macomb Circuit Court
LC No. 2009-001462-DO

Before: WILDER, P.J., AND SAAD AND K. F. KELLY, JJ.

WILDER, P.J.

Plaintiff appeals by leave granted[1] an order denying a motion for relief from a pension provision in a divorce judgment. We reverse and remand.

I

The parties were married in 1993. Plaintiff filed for divorce from defendant in March 2009. The case was submitted to arbitration before a referee. A consent judgment of divorce was entered by Judge Antonio P. Viviano on November 16, 2009. The judgment awarded each party fifty percent of the marital portion of the other party's pension, i.e., plaintiff's pension with the State of Michigan (Lakeview Public Schools) and defendant's pension with Chrysler. A Qualified Domestic Relations Order (QDRO) or Eligible Domestic Relations Order (EDRO), as appropriate for each pension, was to be prepared and incorporated by reference in the judgment. The judgment provided alternate payee "will be allowed to elect or begin receiving his/her benefits at the Participant's earliest retirement age." In addition, it provided, "To the extent that the Plan charges an administrative or actuarial cost for reviewing or administering the QDRO/EDRO, the Plaintiff and Defendant agree to split this cost equally."

Subsequently, two QDROs covering defendant's pension with Chrysler were entered, and an EDRO was entered concerning plaintiff's State of Michigan pension. Plaintiff's EDRO, which is at issue here, contained the following provisions:

---

[1] *Wolf v Mahar*, unpublished order of the Court of Appeals, entered February 22, 2013 (Docket No. 310479).

-1-

**6. AMOUNT OF ALTERNATE PAYEE'S BENEFIT:**

It is the parties' intention, and the order of this Court that the Alternate Payee receive a monthly benefit from the Plan of Fifty (50%) percent of the Participant's retirement allowance, including a pro-rata share of any post-retirement increases, which has accrued as of the date of divorce, . . and which percentage takes into account the years of service that have accrued from the date of marriage.

**7. COMMENCEMENT DATE AND FORM OF PAYMENT TO ALTERNATE PAYEE:**

The benefits payable to the Alternate Payee will begin when the Participant begins to receive benefits under the Plan (or will begin early pursuant to this Section 7) and will be in the form of a single life annuity payable during the lifetime of the Alternate Payee.

However, the Alternate Payee will have the right to elect to receive benefit payments under the Plan at any time beginning when the Participant reaches the earliest retirement date as defined in Section 2(d) of the Eligible Domestic Relations Order Act (MCL 38.1701 et seq.). . . . If the Participant elects to receive an early-reduced retirement benefit, the Alternate Payee's benefit shall also be reduced by the same early retirement factor.

\* \* \*

**10. ACTUARIAL FEES:**

The Participant and Alternate Payee agree to share any additional costs for actuarial services incurred by the Plan due to the review and implementation of the terms of this Order. The Alternate Payee's share of said costs shall be in proportion to the Alternate Payee's share of the Participant's retirement allowance awarded to the Alternate Payee in Section 6 of this Order, above.

Even though plaintiff had not yet retired, defendant, under the earliest retirement age provision in the consent judgment and EDRO, applied for and began receiving benefits through plaintiff's State of Michigan pension on February 1, 2011. On March 31, 2011, plaintiff learned that her share of the pension would be reduced by a state policy known as recoupment. The recoupment policy was designed to prevent a loss to the retirement system from administering and paying benefits to both participants and alternate payees, as opposed to just participants. In its simplest terms, an alternate payee who elects to receive benefits before the participant retires receives a set monthly payment and the participant, when he or she retires after age 60, receives a recouped or reduced monthly benefit to account for the alternate payee's early receipt of payments. Applied here, if defendant began receiving his share of plaintiff's benefits in 2011 and plaintiff did not retire until 2016 (at age 65), when she plans to retire, plaintiff's monthly benefit would be reduced by $712.65 to offset the payments defendant received from 2011 to 2016.

-2-

In a motion for relief from judgment, plaintiff argued that the recoupment policy, triggered by the earliest retirement age provision, was contrary to the pension provisions in the consent judgment and EDRO, which were intended to be split equally. Plaintiff moved to set aside the earliest retirement age provisions.

Plaintiff's motion was referred to the referee, who found that when the parties entered into their consent judgment of divorce, "the fact of recoupment was not considered," and recoupment could reduce plaintiff's equal share if she continued working. "The parties made a mutual mistake as a 50/50 division of each pension appears impossible with recoupment attached to Plaintiff's pension." The referee ordered an evidentiary hearing for expert testimony concerning recoupment. But the parties instead chose to submit the matter on their briefs. Both plaintiff's and defendant's experts opined that plaintiff would receive less than 50 percent of her pension due to recoupment. According to defendant's expert, however, an earliest retirement age provision is contained in nearly all EDROs and QDROs.

In a report and recommendation, the referee again found that, when the parties entered into the divorce consent judgment, the issue of recoupment was not considered and they made a mutual mistake with regard to an equal division of each pension before plaintiff's retirement, and "as such a division appears to be an impossibility with recoupment."

Defendant objected to the referee's report and recommendation. Defendant argued, *inter alia*, plaintiff's motion was untimely under the one-year limit of MCR 2.612(C)(1)(a) and (C)(2). Plaintiff countered that the motion was timely because she was not informed of recoupment until after the EDRO was entered and defendant received payments. Moreover, plaintiff argued that it was inequitable for defendant to receive a larger payment under her pension than she received.

Following defendant's objection to the referee's report and recommendation, the trial court ordered an evidentiary hearing regarding recoupment, but again, the parties stipulated to adjourn the hearing and filed a stipulation of facts, including:

> The issue of recoupment was not known to the parties or considered by them at the time the property settlement was placed on the record on July 14, 2009.
>
> * * *
>
> [W]hen Defendant began drawing his portion of Plaintiff's State of Michigan pension, recoupment was put in place thereby potentially reducing Plaintiff's current 50% position in her pension should she elect to continue working . . . Based on the preceding, it was found that the parties made a mutual mistake as to a 50/50 division of each pension before Plaintiff's retirement, as it appears to be an impossibility with recoupment attached to Plaintiff's pension.

The trial court granted defendant's objections to the referee report and denied plaintiff's motion for relief from judgment. The trial court ruled that plaintiff's motion was timely, but that relief from judgment was not warranted. The trial court found the unambiguous settlement agreement allowed defendant to begin receiving benefits at plaintiff's earliest retirement age. The trial court did not accept the parties' stipulation that "the issue of recoupment was not known to the parties" because it found the information was easily accessible on the State of

Michigan website. Further, the trial court found no extraordinary circumstances to justify the requested relief and it would detrimentally affect defendant's substantial rights to set aside the provisions permitting defendant to begin receiving plaintiff's benefits at plaintiff's earliest retirement age.

II

On appeal, plaintiff argues that, in deciding whether to reform the consent judgment, the trial court erred by refusing to accept the parties' stipulation of facts about recoupment. We agree. Issues of law are reviewed de novo. *Latham v Barton Mallow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

A mistake of fact is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 442; 729 NW2d 277 (2006). A mistake of law is "a mistake by one side or the other regarding the legal effect of an agreement." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006). Stipulations of fact are "sacrosanct," *Dana Corp v Employment Security Comm*, 371 Mich 107, 110; 123 NW2d 277 (1963); *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 706; 714 NW2d 392 (2006), whereas stipulations of law do not bind a court, *Gates v Gates*, 256 Mich App 420, 426; 664 NW2d 231 (2003); *Staff v Johnson*, 242 Mich App 521, 535; 619 NW2d 57 (2000).

We conclude that the trial court erred when it failed to accept the parties' stipulation that they did not know about the state's recoupment policy. Although the trial court found definitions and explanations of the recoupment policy were available on the state's website, the parties were not aware of them—or informed about them by counsel—at the time the consent judgment, which incorporated by reference the EDRO, was entered. Similarly, the parties were not aware or informed of the recoupment policy when the EDRO was drafted by a pension specialist months later. Plaintiff first learned of the recoupment policy after defendant elected to receive his share of plaintiff's pension under the EDRO. The parties clearly and unambiguously intended to split each pension equally, relying on the word "equal" and its derivations (equally, equalize, equalized, equalization) repeatedly in the property settlement and pension and retirement sections of the consent judgment. They also agreed to "split equally" the costs of administering the EDRO. Because recoupment is a cost imposed by the retirement system for administering and paying benefits to both the participants and alternate payees, had they known about recoupment, the parties would have expected it to be split equally. But because the parties were under a mistake of fact about recoupment, they could not understand the inequitable *effect* the recoupment policy would have on their division of plaintiff's pension in the consent agreement and the EDRO when defendant elected to receive benefits at plaintiff's earliest retirement age—a closely related legal question under *Casey*. The trial court should have accepted the parties' stipulation that they did not know about the state's recoupment policy.

III

Next, on appeal, plaintiff argues that because a mutual mistake existed, reformation of the consent judgment and EDRO—particularly the provisions allowing the alternate payee to receive benefits at the participant's earliest retirement age, thereby triggering the inequitable recoupment

-4-

policy—was required under MCR 2.612(C)(1).  We agree.  Decisions on motions to set aside a judgment under MCR 2.612(C) are reviewed for abuse of discretion.  *Rose v Rose*, 289 Mich App 45, 49; 795 NW2d 611 (2010); *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002).  A court abuses its discretion when its decision is outside the "range of principled outcomes."  *Sherry v East Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011) (citation and quotation marks omitted).  Interpretation and application of a court rule is a question of law, reviewed de novo.  *Henry v Dow Chemical Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

A

At the outset, we note that defendant argued below that plaintiff's motion for relief from judgment under MCR 2.612(C)(1) was untimely because it was not filed within one year of the consent judgment.  We disagree.  MCR 2.612(C)(1) allows a court to relieve a party from "a final judgment, order, or proceeding" on the basis of "[m]istake, inadvertence, surprise, or excusable neglect."  MCR 2.612(C)(2) provides, "The motion must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken. Except as provided in MCR 2.614(A)(1), a motion under this subrule does not affect the finality of a judgment or suspend its operation."

The consent judgment was entered on November 16, 2009.  But because the EDRO created to effectuate the terms of the consent judgment with respect to plaintiff's pension was not entered until October 13, 2010, the trial court property determined that October 13, 2010 was the starting point for calculating the one-year time limit under MCR 2.612(C)(2).  Plaintiff's April 28, 2011 motion, was filed within a reasonable time of learning about recoupment on March 31, 2011, and within one year of the entry of the EDRO, and was therefore timely.[2]

B

Generally, a court may not change or rewrite plain and unambiguous contract language under the guise of interpretation.  *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007).  But

> [a] court of equity has power to reform the contract to make it conform to the agreement actually made.  To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence.  A unilateral mistake is not sufficient to warrant

---

[2] We note that MCL 38.1710 provides, in relevant part, "The EDRO cannot be amended, vacated, or otherwise set aside after the retirement system has made the first payment under the EDRO or after the participant dies, whichever occurs first."  Although the retirement system has made the first payment under the EDRO, under these facts, MCL 38.170 conflicts with MCR 2.612(C)(1) allowing for relief from the EDRO within one year.  The court rule prevails here because it governs practice and procedure.  See *Staff v Johnson*, 242 Mich App 521, 530; 619 NW2d 57 (2000).

reformation. A mistake in law . . . is not a basis for reformation. [*Casey*, 273 Mich App at 398 (quotation marks and citations omitted).]

In *Smith v Smith*, 292 Mich App 699; 823 NW2d 114 (2011), the parties to a property settlement agreed that the husband would retain an IRA and the wife would retain all other retirement accounts and receive a cash payment from the husband. Together, the wife received half the total fixed value of the retirement accounts. When the value of the husband's IRA subsequently increased, the wife claimed she was entitled to a share of the increase in value. But this Court noted that the parties used fixed values for all the retirement accounts, as opposed to dividing the accounts "evenly in kind," for example. *Id.* at 703-704. This Court determined that the parties knew stocks fluctuated daily and could have accounted for market fluctuations in the property settlement, but they did not. *Id.* at 705. Therefore, this Court declined to "rewrite the agreement to [the wife's] advantage." *Id.*

Unlike the parties in *Smith*, who knew that stocks fluctuated but failed to account for those fluctuations in the property settlement, plaintiff and defendant did not know about the retirement system's recoupment policy designed to prevent a loss to the retirement system from administering and paying benefits to both participants and alternate payees. The contract plaintiff and defendant negotiated, to each receive 50 percent of the other's pension and "split equally" any costs of administering the EDRO, reflected the parties' intention to achieve an equal pension settlement. But despite these efforts, as a result of the provision allowing the parties to receive benefits at the participant's earliest retirement age, defendant's election to receive benefits before plaintiff retired, and the parties' mutual mistake about recoupment, the EDRO as drafted permits defendant to receive from plaintiff's pension an amount substantially higher than plaintiff will receive.

The trial court abused its discretion by failing to grant plaintiff's motion for relief from judgment. We remand for reformation of the consent judgment and EDRO to account for the parties' mutual mistake as to the recoupment policy and its inequitable effect on defendant's receipt of benefits before plaintiff's retirement.[3]

Reversed and remanded. We do not retain jurisdiction. Plaintiff, as prevailing party on appeal, may tax costs pursuant to MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

---

[3] In light of our decision, we decline to address plaintiff's arguments on appeal regarding res judicata and law of the case, her request for relief from judgment under MCR 2.612(C)(1)(f), and her claim that the trial court abused its discretion by considering defendant's objections to the referee's decision.