*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

23771 BLACKSTONE, LLC,

Plaintiff-Appellant,

UNPUBLISHED
November 16, 2023

v

No. 364333
Wayne Circuit Court
LC No. 20-013744-CB

CONIFER INSURANCE COMPANY,

Defendant-Appellee.

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant and denying plaintiff's cross-motion for summary disposition. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On June 20, 2020, a fire occurred at plaintiff's building in Warren, Michigan; the building housed a marijuana growing operation. Defendant insured the property against fire and other hazards under a commercial property insurance policy that defendant originally issued in 2017 and renewed annually thereafter. The parties do not dispute that defendant's policy included a Protective Safeguards Endorsement (PSE), which provided, in pertinent part:

PROTECTIVE SAFEGUARDS

1. *As a condition of this insurance*, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

\* \* \*

-1-

**"P-9"** The protective system described in the Schedule. [Emphasis added.]

A text box on the first page of the PSE under the heading "SCHEDULE" contained the following text:

**Describe any "P-9":** Premises #1**:**Automatic Extinguishing System.[1]

After the fire, plaintiff filed a claim under the policy, but defendant denied the claim because the property did not have an automatic extinguishing system (AES). Defendant's denial letter stated:

After inspection of the property and verifying with your Public Adjustor with National Claims Service, LLC and in speaking with you during our initial conversation, we identified that the property does not possess a classified "P-9: Automatic Extinguishing System." As per the . . . **Protective Safeguards Endorsement**, a classified "P-9: Automatic Extinguishing System is require[d] in the event of loss caused by fire. With no "P-9: Automatic Extinguishing System" in place, this loss is therefore excluded from coverage.

Plaintiff sued, asserting claims for breach of contract (Count I) and equitable relief in the form of reformation of the insurance policy (Count II). In Count II, plaintiff alleged that defendant had repeatedly inspected the property and "was aware, or should have been aware, from the inspection and other sources, that the property did not have an automatic sprinkler system." Plaintiff alleged that, under the circumstances, it would be "inequitable" to allow defendant to deny coverage because it did not have an AES on the property, and argued that the policy should be reformed to remove the exclusion that prohibited coverage if the property did not have an AES.

The trial court entered a stipulated order recognizing that the parties agreed that plaintiff's property did not have an AES on the date of the fire. The order provided that "the fact that Plaintiff did not maintain an automatic extinguishing system on June 20, 2020 at 23771 & 23871 Blackstone Ave, Warren, MI 48089, is hereby determined to be an established fact for purposes of the present action."

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that the policy language was clear and unambiguous, and that because plaintiff did not have an AES on its property, it was precluded from recovering fire protection benefits under the terms of the policy. Defendant also argued that plaintiff was not entitled to equitable relief in the form of reformation because it was deemed to have constructive knowledge of the terms of the insurance policy, including conditions of coverage, and to the extent that it may have mistakenly believed that an AES was not required as a condition of coverage, it was not a mutual mistake of fact because defendant did not share that same belief or understanding.

Plaintiff filed a response to defendant's motion, as well as its own cross-motion for summary disposition under MCR 2.116(C)(10), arguing that defendant was aware that plaintiff's

---

1 The parties agree that the fire occurred at "Premises #1" as listed in the PSE.

property did not have an AES—as indicated in multiple inspection reports that defendant received—but continued to renew the policy. Accordingly, plaintiff argued that defendant should be estopped from denying coverage for lack of an AES. Plaintiff also argued that the PSE was ambiguous because it referred to an AES as a condition of coverage, but it did not actually define the system. Plaintiff further argued that the policy should be reformed on the basis of a mutual mistake between the parties, asserting that the parties did not intend to preclude coverage for a fire loss on the basis of the absence on the property of an AES.

The trial court granted defendant's motion and denied plaintiff's motion. It held that defendant was entitled to summary disposition because the policy unambiguously precluded coverage if the insured property did not have an AES, and it was undisputed that there was no AES on plaintiff's property. The trial court also held that defendant's inspections of the property did not operate as a waiver of the policy language requiring an AES. The court noted that the inspections were for defendant's purposes, not plaintiff's benefit. The trial court also rejected plaintiff's arguments that defendant was estopped from enforcing the AES requirement, and that the policy should be reformed to remove the AES requirement. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684; 965 NW2d 707 (2020).

> A motion under MCR 2.116(C)(10), . . . tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761, 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted in original). [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).]

This Court also reviews de novo issues of contract interpretation, including the interpretation of policy language. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). Additionally, we review de novo the applicability of the doctrine of equitable estoppel, *Sylvan Twp v City of Chelsea*, 313 Mich App 305, 315-316; 882 NW2d 545 (2015), and a trial court's decision whether to grant equitable relief in the form of reformation of an insurance policy. *Johnson v USA Underwriters*, 328 Mich App 223, 233-234; 936 NW2d 834 (2019).

## III. AMBIGUITY

Initially, plaintiff argues that the language of the policy is ambiguous, and that it should be construed against defendant and in favor of coverage because an AES is not defined in the PSE. We disagree.

When interpreting a contract, this Court's goal is to determine the intent of the parties. *Barshaw v Allegheny Performance Plastics, Inc*, 334 Mich App 741, 748; 965 NW2d 729 (2020). If the language of a contract is unambiguous, we will enforce the contract as written, unless it is contrary to public policy. *Id.* (citations omitted). Conversely, "[a] contract is ambiguous if its words can be reasonably understood in different ways or when its provisions irreconcilably conflict." *Wagner v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 251, 258; 908 NW2d 327 (2017). But a contractual provision is not ambiguous merely because a term is not defined or because the parties may disagree on the meaning of a term. *Wasik v Auto Club Ins Ass'n*, 341 Mich App 691, 696; 992 NW2d 332 (2022). This Court will construe an ambiguity in the contract against the insurer and in favor of coverage, but " 'only . . . if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the [factfinder] unable to determine what the parties intended their contract to mean.' " *Id.*, quoting *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 471; 663 NW2d 447 (2003).

We disagree with plaintiff that the language of the PSE is ambiguous because it does not provide a definition of a "P-9" or AES. The PSE refers to a P-9 system as "the protective system described in the Schedule," and the schedule itself refers to the P-9 as an AES. Additionally, § A(2) of the PSE provides a definition of an "automatic sprinkler system," stating that it means:

> *a. any automatic fire protective or extinguishing system*, including connected:
>
> (1) Sprinklers and discharge nozzles;
>
> (2) Ducts, pipes, valves, and fittings;
>
> (3) Tanks, their component parts and supports; and
>
> (4) Pumps and private fire protection mains.
>
> b. When supplied from an automatic fire protective system;
>
> (1) Non-automatic fire protective systems; and hydrants, standpipes, and outlets. [Emphasis added.]

Accordingly, we reject plaintiff's contention that the PSE is ambiguous because it does not adequately explain the meaning of an AES.[2]

Plaintiff also relies on *Westfield Ins Co v Enterprise 522, LLC*, 34 F Supp 3d 737 (ED Mich, 2014), in support of its argument that the policy is ambiguous.[3] The plaintiff in that case

---

[2] Plaintiff does not explain how, under any reasonable interpretation of the PSE language, a reader could have been left with the belief that *no* sprinkler system or other form of fire-protection system was required as a condition of coverage.

[3] Decisions of lower federal courts are not binding on this Court, but may be considered for their persuasive effect. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

issued a fire insurance policy after an insurance agent mistakenly represented on the defendant's application that the property had an automatic sprinkler system. In 2011, an inspector reported to the plaintiff insurer that a sprinkler system was not in place, but the plaintiff still renewed the policy with a reduced premium. *Id*. at 742. After a fire completely destroyed the defendant's building in 2012, the plaintiff insurer denied coverage because an automatic sprinkler system was not in place. *Id*. at 743. The court held that the exclusion in question was "patently ambiguous" on its face, and that a reading of the policy as a whole, including the endorsement and the declarations page, failed to demonstrate that the exclusionary language was a condition of fire coverage. *Id.* at 744. As the court in *Westfield* noted, the exclusion was only defined on one page of the policy, the protective safeguards endorsement, but it was not actually listed on the schedule of that endorsement. *Id*. The policy provided only that "as a condition of insurance [defendant] is required to maintain the protective devices or services listed in the schedule above." *Id.* at 742. The court explained that

> "P–1 is the code for automatic sprinklers and it was not listed in the schedule. The schedule said "Information required to complete this Schedule, if not shown above, will be shown in the Declarations." P-1 was referenced in the Declarations, but not listed as a limitation on coverage; instead, it was listed under "Optional Coverages." [*Id.*]

In denying the plaintiff insurer's motion for summary judgment, the court first noted that when coverage under the policy was conditioned on an exclusion, the insurer said so explicitly, but that the insurer did not so condition fire coverage on having a sprinkler system. *Id*. at 745. Further, given the testimony of Westfield's representatives that if the underwriters had corrected the file to reflect that a sprinkler system was not in place, fire coverage would have still issued without the P-1 condition, it was "clear that the exclusion was not intended to be part of the agreement." *Id*.

*Westfield* is factually distinguishable from this case. In *Westfield*, the exclusion did not actually list a required protective device or service in the schedule, despite directing its insured to "maintain the protective devices or services listed in the schedule above." In this case, the PSE clearly indicates that plaintiff was required to maintain a "P-9" system as a condition of insurance, and as stated, defines both a P-9 and an AES with sufficient clarity to avoid confusion—at least in this case, in which it is undisputed that plaintiff did not have *any* sort of automatic sprinkler or fire extinguishing device in place. Accordingly, we agree with the trial court that *Westfield* is factually distinguishable and does not support plaintiff's argument that the policy is ambiguous. *Wilkie*, 469 Mich at 47.

IV. NOTICE AND EQUITABLE ESTOPPEL

Plaintiff also argues that defendant should be precluded from denying coverage based on both the terms of the policy and the doctrine of equitable estoppel. We disagree.

Plaintiff argues that the language of the PSE prevents defendant from denying coverage when it had notice that plaintiff did not have an AES on the property. In support of this argument, plaintiff relies on § B(1) of the PSE, which provides:

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact[.][4]

Plaintiff argues that defendant could not deny coverage under this provision because it applies only if defendant was not notified of a suspension or impairment in a protective safeguard, and that defendant had received actual notice, through its own inspections, that there was no AES on the property. However, defendant did not rely on § B(1) as a basis for denying coverage. Rather, defendant denied coverage under § A(1), which expressly provides that the presence of an AES on the property is a "condition of this insurance." It is undisputed that plaintiff did not have the required AES on its property. It was the total absence of an AES on the property, not any suspension or impairment of an existing system, that was the basis for defendant's denial of coverage. Therefore, plaintiff's reliance on § B(1) is misplaced.

Plaintiff also argues that defendant should be equitably estopped from denying coverage. We disagree. In *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002), this Court explained the doctrine of equitable estoppel as follows:

Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact. Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts. [Citations omitted.]

Plaintiff cites *Gordon v St Paul Fire & Marine Ins Co*, 197 Mich 226, 234; 163 NW 556 (1917), in which the Supreme Court held that an insurance company was equitably estopped from "asserting a forfeiture for a condition of the premises existing at the time of [a] fire, which existed to the knowledge of the company at the making of the contract, and which condition of the premises it was not agreed by the contract of insurance was to be changed." We find *Gordon* distinguishable from this case. In *Gordon*, the policy at issue contained language indicating that the entire policy was void if a building on the property "be or become vacant or unoccupied and so remain for ten days." The evidence at trial demonstrated that the property was vacant at the time the defendant issued the policy and was periodically vacant over three years until the fire, and further that the defendant was aware that the subject property was vacant at the time it issued the policy and that the plaintiff would be renting the property to tenants. The Court held that the insurer was estopped from relying on the property's vacancy as a basis for excluding coverage, noting that "the premises were in the same condition, to the knowledge of the company, as when

---

[4] § B(2) of the PSE also provided that defendant would not pay for fire loss or damage if the plaintiff "[f]ailed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order."

the contract of insurance was entered into; there was no agreement in the policy that the condition of the premises should be changed." *Id*. at 241.

In this case, unlike in *Gordon*, the lack of an AES did not render the entire insurance policy void; fire insurance was only a portion of the commercial insurance policy between plaintiff and defendant, and the lack of an AES would only operate to deny certain types of claims. And there was no evidence that defendant was aware at the time the policy was entered into that the property lacked an AES and would continue to do so throughout the term of the policy and several renewals. The language of the PSE can be read as informing plaintiff of a simple requirement for coverage for fire damage, or in other words, "an agreement in the policy that the condition of the premises should be changed" for there to be coverage. *Gordon*, 197 Mich at 241. *Gordon* therefore does not aid plaintiff.

Additionally, plaintiff presented evidence demonstrating that defendant had performed regular inspections of the property, and had noted that the premises did not contain a sprinkler system. As the trial court observed, however, the inspection reports were prepared solely for defendant's benefit, not for plaintiff, and there is no evidence of any "representations, admissions, or silence" by defendant, intentionally or negligently, that induced plaintiff to believe certain facts. *Lakeside Oakland Dev, LC*, 249 Mich App at 527. We agree with the trial court that plaintiff could not rely on the inspection reports as modification, waiver, or abandonment of the otherwise clear language of the PSE, which obligated plaintiff to have an AES as a condition of fire protection coverage. The policy expressly required that any changes to "[the] policy's terms . . . be amended or waived only by endorsement issued by us and made a part of this policy." Accordingly, the trial court did not err by holding that there were no genuine issues of material fact regarding whether defendant should be equitably estopped from denying fire protection coverage.

## V. MUTUAL MISTAKE

Plaintiff also argues that the trial court erred by denying plaintiff's claim that the insurance policy should be reformed due to a mutual mistake by the parties. We disagree.

In certain circumstances, a trial court has the equitable authority to reform an insurance policy "so that it conforms to the agreement actually made." *Johnson v USA Underwriters, Inc*, 328 Mich App 223, 234; 936 NW2d 834 (2019). In *Wolf v Mahar*, 308 Mich App 120, 129; 862 NW2d 668 (2014), this Court, quoting *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2007), explained:

> A court of equity has power to reform the contract to make it conform to the agreement actually made. To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence. A unilateral mistake is not sufficient to warrant reformation. A mistake in law . . . is not a basis for reformation.

A mistake of fact occurs when both parties share and rely on an erroneous belief regarding a material fact that affects the substance of the transaction. *Wolf*, 308 Mich App at 126. Conversely, a mistake of law is a mistake by one side or the other regarding the legal effect of an agreement. *Johnson*, 328 Mich App at 234-235.

Plaintiff asserts that the AES requirement should not bar coverage for its fire loss because both it and defendant were fully aware that an AES did not exist at the property. Plaintiff was aware because it owned the property, and defendant was aware because multiple inspections revealed that there was no AES on the property. However, the mere fact that defendant and plaintiff may have been aware that the property did not have an AES does not establish that the parties mutually understood and agreed that an AES was not required as a condition of coverage. As stated, the policy unambiguously required that the property have an AES as a condition of coverage, and there is no evidence that defendant ever intended or agreed that an AES was not necessary. At best, plaintiff has demonstrated that *plaintiff* was unaware of the impact of not having an AES on its insurance coverage, but plaintiff has not demonstrated that defendant shared this same belief or otherwise did not intend that plaintiff have an AES on its property as a condition of coverage for a fire loss despite the express terms of the policy. *Wolf*, 308 Mich App at 126. We agree with the trial court that there is no evidence of a mutually shared factual mistake by the parties regarding the impact of not having an AES at the property on the availability of coverage. Accordingly, the trial court did not err by failing to reform the insurance policy.

## VI. OTHER ISSUES

Plaintiff also argues that defendant was not entitled to summary disposition because there are genuine issues of material fact to be decided by a jury regarding (1) whether plaintiff's existing fire prevention equipment was sufficient to meet defendant's expectations under the insurance policy, and (2) whether defendant engaged in inequitable conduct by continuing to collect premiums from plaintiff while knowing that it would not be liable for any fire loss because plaintiff's property did not have an AES. We disagree.

In support of this claim, plaintiff argues that the inspection reports regarding the subject property detail the lack of deficiencies and hazards, state "that the loss control efforts appear to be effective," and note that fire extinguishers were present on the premises. For example, a July 18, 2017 inspection report states that portable fire extinguishers are present on the premises, and, on the basis of the survey, the risk of loss was considered to be "[s]atisfactory." Similarly, a July 18, 2019 inspection report again notes the presence of fire extinguishers on the premises, and again states that the risk was considered to be satisfactory.

The evidence on which plaintiff relies merely establishes that fire extinguishers were kept on the property. Defendant's policy, however, required that the property have an "automatic" fire extinguishing system. Plaintiff did not offer any evidence that its equipment was designed to operate automatically in the event of a fire. Moreover, plaintiff stipulated that it "did not maintain an automatic extinguishing system" on its property on the date of the fire and, due to that stipulation, the trial court ordered that "the fact that Plaintiff did not maintain an automatic extinguishing system on June 20, 2020 at 23771 & 23871 Blackstone Ave, Warren, MI 48089, is hereby determined to be an established fact for purposes of the present action." Plaintiff cannot stipulate to facts and subsequently argue that a genuine issue of material fact exists regarding those same facts. See MCR 2.116(A)(2); *Dana Corp v Appeal Bd of Mich Employment Sec Comm'n*, 371 Mich 107, 110; 123 NW2d 277 (1963) (stating that "once stipulations have been received and approved they are sacrosanct"). Accordingly, there is no genuine issue of material fact regarding whether plaintiff's fire prevention equipment was sufficient to satisfy the requirements of the PSE.

Plaintiff also asserts that summary disposition was not warranted because of a "question of inequitable conduct, given that Defendant has accepted premiums knowing that it would not have to pay a claim, should be properly placed before a jury." We disagree. We have discussed the issue of equitable estoppel. To the extent that plaintiff's argument differs from its equitable estoppel argument, plaintiff does not offer any meaningful legal argument or cite any legal authority in support of it. Therefore, this argument has been abandoned. *Badiee v Brighton Area Sch*, 265 Mich App 343, 359-360; 695 NW2d 521 (2005) ("A party waives an issue when it gives the issue cursory treatment on appeal."); *ER Drugs v Dep't of Health & Human Servs*, 341 Mich App 133, 146-147; 988 NW2d 826 (2022) ("It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (citation omitted).

Affirmed.


/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado