*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAUL PARENT,

Plaintiff-Appellee,

v

MELISSA MOUSEL, also known as MELISSA
HARDING, also known as MELISSA STUPYRA,

Defendant-Appellant.

UNPUBLISHED
December 7, 2023

No. 364910
Genesee Circuit Court
Family Division
LC No. 15-313925-DC

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant-mother Melissa Mousel appeals by right the trial court's orders dismissing cross-motions for change of custody that she and plaintiff-father Saul Parent filed, each seeking sole custody of their minor child, HLP. The last custody order was entered in 2018, and it awarded the parties joint custody. After years of failed attempts, the trial court dismissed both parents' motions for sole custody because it found no proper cause or change of circumstances. The trial court's conclusion that the parties had not established proper cause or change of circumstances contradicted its own findings and was against the great weight of the evidence. We vacate and remand.

## I. BACKGROUND

This case involves a years-long custody dispute between plaintiff-father and defendant-mother over their only child, HLP. HLP was born in 2014, and this case started a few months later. From the outset, plaintiff-father accused defendant-mother of engaging in a campaign of parental alienation and deceit, and defendant-mother accused plaintiff-father of physically and emotionally abusing HLP. The trial court initially ordered joint legal and physical custody of HLP. The most recent custody order, entered in 2018, continued joint legal and physical custody.

Throughout the case, the parents have continued to accuse each other of various improprieties and of violations of court orders, ranging from the trivial to the extreme. These allegations resulted in multiple Children's Protective Services (CPS) investigations, but each time the investigation resulted in a finding that the concerns giving rise to the investigation were

unsubstantiated. Because of the nature of this appeal, the specific details of the allegations are not particularly relevant to the issues before us.

Multiple professionals involved with this case, including mental health professionals examining HLP, the guardian ad litem, parenting time coordinator, and CPS workers, opined that the parents' animosity toward each other was harming HLP. This manifested in HLP having challenges in school and telling different and conflicting stories about the parents' behavior based on who HLP was speaking to. Because of the parents' mutual animosity and inability to co-parent, the trial court entered numerous orders addressing many details of HLP's life and of the parents' relationships with HLP and each other. The subject matter of these orders ranged from how many minutes HLP could be kept in time-out when being punished to whether HLP should continue attending karate while playing baseball. At one point, the court observed that "the parents have vacated" their "parental responsibilities unlike 99.9995% of my cases," resolving to decide matters on an issue-by-issue basis as the parties raised them. Despite the trial court's repeated admonitions to set aside their animosity for the benefit of HLP, the parties were clearly unable to agree even on basic issues of child-rearing.

Eventually, both parties moved for sole custody, defendant-mother in 2019 and plaintiff-father in 2021. In her motion, defendant-mother alleged that HLP had disclosed that plaintiff-father physically abused him and that plaintiff-father disparaged HLP. In the father's motion, he alleged that defendant-mother attempted to alienate the father, made false allegations of abuse, and forced HLP to make false statements. Although each parent sought sole custody, and the allegations in the competing motions portrayed starkly different views of each parent, the parents agreed on two things: first, that the other was solely at fault; and second, that shared custody could not continue. The evidence showed that HLP was suffering as a result of the parties' inability to coexist peaceably and that his mental health would worsen if the situation was not resolved. The evidence and allegations also showed that the parents could not agree on basic aspects of HLP's upbringing, including choosing a school system, coordinating medical care for HLP's respiratory issues, and extracurricular activities.

The trial court did not immediately decide either motion. Instead, it entered a series of interim orders involving various aspects of the parties' parenting on which they could not agree. After several adjournments, the trial court held an evidentiary hearing in January 2023 on the competing motions for sole custody.

At the hearing, the parents agreed that there had been a change of circumstances since the trial court's most recent custody order, entered in February 2018. The parties presented evidence and blamed each other for the increasing—and increasingly apparent—harm to HLP. Despite the numerous points of disagreement, the parties and the court agreed that HLP was being harmed.

At the conclusion of the hearing, the trial court found that the parties were incapable of cooperation, were harming HLP, and were abusing court processes. In particular, it observed that it had "never, in twenty-one years, seen a child put in this situation intentionally by parents where litigation is the sole twenty-four-hour a day, seven days a week, 365 days a year purpose that every human being the two of you encounter, including your child . . . ." In February 2023, it nonetheless dismissed both custody motions because it found no proper cause or change of circumstances, instead declaring that "[m]utually created, intentional conflict is not a basis for a new custody

-2-

hearing" and that because it was not empowered to remove HLP from the care of both parents, it would "not participate in this situation any longer."

Defendant-mother appealed, and defendant-father has not opposed the appeal.

## II.  STANDARDS OF REVIEW

In custody matters, this Court applies three standards of review.  *Stoudemire v Thomas*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 360441); slip op at 4.  We review the trial court's factual findings, including whether a party has shown proper cause or change of circumstances, under the great-weight-of-the-evidence standard.  *Id*. at ___; slip op at 4.  "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction."  *Id*. at ___; slip op at 4 (quotation marks and citation omitted).  We review the trial court's legal rulings for clear legal error.  *Id*. at ___; slip op at 4.  And we generally must affirm the trial court's discretionary rulings unless "the trial court's decision is so palpably and grossly violative of fact and logic that it evidence a perversity of will, a defiance of judgment, or the exercise of passion or bias."  *Id*. at ___; slip op at 4 (quotation marks and citation omitted).  In general, a trial court abuses its discretion when it makes an error of law or when it fails to exercise its discretion when called on to do so.  *Hein v Hein*, 337 Mich App 109, 116; 972 NW2d 337 (2021).

## III.  LAW AND ANALYSIS

On appeal, defendant-mother argues only that the trial court erred by failing to find proper cause or a change of circumstances that would permit revisiting the 2018 custody order.  Defendant-mother does not argue—at this time—that she should be awarded sole custody of HLP, but rather that one of the parents must be awarded sole custody of HLP.  We agree.

### A. LEGAL STANDARD FOR PROPER CAUSE AND CHANGE IN CIRCUMSTANCES

The Child Custody Act, MCL 722.21, *et seq*., provides specific procedural requirements and required fact findings, under MCL 722.27(1)(c), for a trial court before it may modify a child's established custodial environment.  *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 16.  "Among the purposes of the Child Custody Act 'are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes.' "  *Id*. at ___; slip op at 16, quoting *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017).

To that end, "MCL 722.27 imposes a gatekeeping function on the trial court and provides standards that a moving parent must satisfy to change custody or parenting time."  *Kuebler*, ___ Mich App at ___; slip op at 16.  As provided in MCL 722.27(1)(c), when a party seeks to modify a custody order, the moving party must establish proper cause or a change of circumstances by a preponderance of the evidence before the court may consider whether the proposed modification is in the child's best interests.  *Lieberman*, 319 Mich App at 81-82.  To establish a change of circumstances, the movant must prove by a preponderance of the evidence that "the conditions surrounding the custody of the child, which have or could have a significant effect on the child's well-being, have materially changed" since the entry of the last custody order.  *Lieberman*, 319 Mich App at 81-82 (quotation marks, citation, and emphasis omitted).  " '[T]he evidence must

demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child.' " *Id.*, quoting *Vodvarka v Grasmeyer*, 259 Mich App 499, 514; 675 NW2d 847 (2003) (alteration in original). To establish proper cause, "a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. *Lieberman*, 319 Mich App at 82 (quotation marks and citation omitted). Evidence of "proper cause" or "change of circumstances" that would warrant revisiting a prior custody order must be relevant to at least one of the statutory "best interests" factors set forth in MCL 722.23. *Kuebler*, ___ Mich App at ___; slip op at 16. It must also "be of such magnitude to have a significant effect on the child's well-being." *Id*. at ___; slip op at 16 (quotation marks and citation omitted). Only after satisfying this threshold showing can the court consider whether modification is appropriate. *Vodvarka*, 259 Mich App at 508-509 ("The movant, of course, has the burden of providing by a preponderance of the evidence that either proper cause or a change of circumstances exists *before* the trial court can consider whether an established custodial environment exists (thus establishing the burden of proof) and conduct a review of the best interest factors.").[1] The subsequent steps for a trial court to change a custodial environment are not at issue; rather, defendant-mother argues that the trial court erred in its handling of the threshold inquiry of proper cause or change of circumstances.

## B. THE TRIAL COURT ERRED WHEN IT FOUND THE PARTIES HAD NOT ESTABLISHED PROPER CAUSE

The trial court erred when it concluded that the parties had not established proper cause to revisit the custody order.[2] Its conclusion was contrary to the facts of this case and its own factual

---

[1] After finding proper cause or change of circumstances, "the trial court must first determine whether the proposed change would modify the established custodial environment of that child." *Pierron v Pierron*, 486 Mich 81, 92; 782 NW2d 480 (2010). If proper cause or change in circumstances is established, a trial court still may not change a child's established custodial environment unless there is clear and convincing evidence that doing so is in the child's best interests. *Griffin v Griffin*, 323 Mich App 110, 118-120; 916 NW2d 292 (2018).

[2] As an initial matter, defendant-mother argues that the parties agreed to the existence of a change of circumstances or proper cause. The trial court would have erred by failing to abide by a stipulation of fact entered into by the parties. *Wolf v Mahar*, 308 Mich App 120, 126-127; 862 NW2d 668 (2014). But here, there was no stipulation, let alone a stipulation of fact as opposed to a mixed issue of fact and law. Defendant-mother relies on an order that stipulated only that no showing of proper cause or change of circumstances would be required to schedule an evidentiary hearing regarding the custody motions, not that proper cause or change of circumstances actually existed. Otherwise, the parties generally agreed that shared custody could not continue, and they both argued that proper cause or change of circumstances existed. Other than generally agreeing that HLP was suffering and that the current shared custody situation was untenable, they agreed as to little else and generally accused the other of committing most of the wrongdoing. Notably, both parties requested an evidentiary hearing regarding whether there was proper cause or change of circumstances, which suggests an absence of agreement as to the relevant underlying facts. The

-4-

findings. As stated, unlike change in circumstances, which requires a change since the entry to the last custody order, the focus of proper cause is the "significance of the facts or events" or "the appropriateness of the grounds offered." *Vodvarka*, 259 Mich App at 514-515. Although it might be unusual for facts that already existed at the time of the prior custody order to amount to "proper cause," such situations are possible. *Id*.

Here, the parties did not agree as to who was to blame for HLP's suffering, but the parties and court agreed that one or both of the parents' conduct was harming HLP. The trial court however rejected the parties' argument that there was proper cause because it believed the parties were using court processes to further abuse HLP, and the trial court expressed the view that the courts should not participate in that abuse. It further opined that neither party should be permitted to have sole custody of HLP. While these findings and conclusions may have been appropriate when analyzing whether a change in custody was in HLP's *best interest*, they were inappropriate bases for finding proper cause was not established, and they may have even supported a finding that proper cause was established.

As stated, either "proper cause" or a "change of circumstances" must be relevant to the best-interests factors set forth in MCL 722.23 and it must have a significant effect on the child's life. *Kuebler*, ___ Mich App at ___; slip op at 16. Here, the parental alienation, abuse of HLP, fabrication of allegations of abuse, and effects of the parties' mutual antagonism bear on several of the best interest factors. See, e.g., MCL 722.23(f) (moral fitness of the parties), (j) (willingness and abilities of parties to facilitate and encourage relationship between child and other parents), (k) (domestic violence), (*l*) (any other factor considered relevant by the court). The trial court could have—and should have—relied on any one of these factors to find that the parties established proper cause by a preponderance of the evidence.

First, parental alienation implicates MCL 722.23(j). See *In re Gorcyca*, 500 Mich 588, 597 n 4; 902 NW2d 828 (2017) (noting that "[p]arental alienation is seemingly contrary to MCL 722.23(j)"). MCL 722.23(j) is the best-interests factor that requires consideration of "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." See *In re Gorcyca*, 500 Mich at 597 n 4. Here, plaintiff-father has alleged that defendant-mother attempted to alienate him from HLP. At points, this resulted in HLP making unsubstantiated reports of abuse about plaintiff-father and inconsistent stories regarding plaintiff-father.

Each parent's allegations that the other abused HLP bears on MCL 722.23(k). See *In re Green*, ___ Mich ___, ___ n 11; ___ NW2d ___ (2023) (Docket No. 162260); slip op at 14 n 11. MCL 722.23(k), in part, requires consideration of "whether domestic violence was directed against

---

fact that there may be "many apparent points of agreement between the parties" does not necessarily establish a "formal stipulation for purposes of adjudication." *Brownell v Kilian*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2003 (Docket No. 231480), p 4. Although unpublished opinions of this Court are not binding, they may be considered instructive or persuasive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359371); slip op at 8. We conclude that there was no stipulation between the parties that the trial court was bound to accept.

the child." See *In re Green*, ___ Mich at ___ n 11; slip op at 14 n 11. Here, each parent alleged that the other abused HLP. Defendant-mother alleged that plaintiff-father physically abused HLP, leading to several CPS investigations and at least one police investigation. Plaintiff-father alleged defendant-mother accused and attacked plaintiff-father for the purpose of alienating him from HLP and that HLP had confided that defendant-mother threatened HLP into disparaging plaintiff-father.

To the extent the evidence supported false allegations or fabrication of allegations of abuse, this would be relevant to MCL 722.23(f), "[t]he moral fitness of the parties involved." See *Butler v Simmons-Butler*, 308 Mich App 195, 205-206; 863 NW2d 677 (2014). Fabrications of abuse would also be relevant to factor (j). *Kuebler*, ___ Mich App at ___; slip op at 25. Here, none of the myriad CPS investigations resulted in substantiated allegations. Particular to plaintiff-father, there was reliable evidence, including from CPS investigators, that HLP's reports changed based on who they were speaking to about plaintiff-father. Although the trial court had evidence of possible false allegations of abuse, it appears not to have considered this as supporting proper cause.

Finally, the parties' mutual antagonism and its effects on HLP established proper cause. We acknowledge that the parties' mutual antagonism is not explicitly covered by any factor set forth in MCL 722.23, but considering the undisputed fact that their mutual antagonism was causing severe emotional harm to HLP, it properly falls within the scope of MCL 722.23(*l*) ("[a]ny other factor considered by the court to be relevant to a particular child custody dispute"). Each of the previously-refenced issues (i.e., parental alienation, allegations of abuse, and fabrication of abuse allegations) may conceivably have required additional fact finding, but the trial court made particular factual findings about the parties' mutual antagonism and the deleterious effects on HLP. The fact that HLP was suffering from mental-health problems—and that the problems were worsening—shows that the issues between the parties were having a significant effect on his well-being. *Kuebler*, ___ Mich App at ___; slip op at 16. The trial court concluded, and the evidence overwhelmingly showed, that at least one of the parents must have been harming HLP based on the sheer number of CPS reports alone, and the trial court actually found that both parties were abusing HLP. This, more than the other factors, supported a finding of proper cause.

These circumstances are relevant to several of the best-interests factors and were having a significant effect on HLP's well-being. The trial court erred by failing to rely on them and its other factual findings in order to find proper cause to revisit its 2018 custody order.[3]

Here, the trial court's error appears to have been rooted in its attempts to maintain joint custody. But there is no statutory presumption in favor of joint custody. *Wellman v Wellman*, 203 Mich App 277, 285-286; 512 NW2d 68 (1994). See also *Fisher v Fisher*, 118 Mich App 227, 232; 324 NW2d 582 (1982) (affirming the trial court's authority—and obligation—to grant sole custody where there is an irreconcilable breakdown and parents "are unable to cooperate and to agree

_____

[3] We therefore need not consider whether the trial court erred by failing to find a change of circumstances. It is possible that although the parties' animosity predated the 2018 custody order, the effects of that animosity on HLP's wellbeing had changed.

generally concerning important decisions affecting the welfare of their children").[4]  "In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision making and discipline—and they must be willing to cooperate with each other in joint decision making." *Fisher*, 118 Mich App at 232.  Though uncommon, a court may grant sole custody if the parents have an irreconcilable inability to agree regarding important questions of child rearing, even if each parent individually would be a fit parent. *Id*. at 232-233.  Further, changing joint custody to sole custody may be appropriate if the parties' inability to cooperate is harming the child.  See *Dailey v Kloenhamer*, 291 Mich App 660, 666-669; 811 NW2d 501 (2011).

In *Fisher*, this Court affirmed the trial court's decision to grant one parent sole custody because the underlying facts established that the parents' marriage (and relationship) had broken down and they were unable to cooperate or agree on decisions regarding the child's welfare. *Fisher*, 119 Mich App at 232-235.  There, much of the disagreement related to overarching child rearing issues, such as religious activities and expressions of belief. *Id*. at 234.  In affirming the order granting sole custody, this Court observed that concerns regarding the best interests of the child were paramount and an award of joint custody would be injurious to the child. *Id*.  Here, the parties' inability to cooperate or agree does not necessarily relate to religion, but it relates to almost every aspect of the child's upbringing and has resulted in court intervention on some of the most basic aspects of parenting.

Defendant-mother argues that *Fisher* required the trial court to determine which parent should have sole custody of HLP and erred by refusing to award either party sole custody.  The question of sole custody, however, relates to the trial court's analysis of the best interests of the child, *Dailey*, 291 Mich App at 666-669, considerations that the trial court never reached.  We acknowledge MCL 722.26a(1) expressly states that "[t]he court shall determine whether joint custody is in the best interest of the child" based on both a consideration of the "best interests" factors set forth in MCL 722.23 and the parents' ability to cooperate and reach agreements as to important decisions concerning the child's welfare.  But the question before this Court is whether the trial court erred when it found no proper cause or change of circumstances that would permit revisiting the 2018 custody order.  As stated above, we conclude that the trial court erred in finding proper cause was not established.

## IV.  CONCLUSION

The trial court's order dismissing the parties' custody motions is vacated because proper cause exists to revisit the 2018 custody order, and the case is remanded for further proceedings, including consideration of whether the relief requested in the motions for sole custody is in HLP's

---

[4] Although *Fisher* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).  See *Wells Fargo Rail Corp v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 10 n 2.

best interests. On remand, the trial court shall consider up-to-date information. *Butters v Butters*, 510 Mich 1096-1097 (2022).[5] We do not retain jurisdiction.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[5] "An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent." *Steele v Winfield*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357935); slip op at 4.