*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSE L. DAVIS,

        Plaintiff-Appellee/Cross-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant,

and

SHATARA AYERS, MODIVCARE SOLUTIONS,
LLC, formerly known as LOGISTICARE
SOLUTIONS, LLC, and ACE
TRANSPORTATION, INC.,

        Defendants-Appellants/Cross-
        Appellees.

UNPUBLISHED
February 1, 2024

No. 362587
Wayne Circuit Court
LC No. 20-016390-NF

JESSE L. DAVIS,

        Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant,

and

No. 363549
Wayne Circuit Court
LC No. 20-016390-NF

SHATARA AYERS, MODIVCARE SOLUTIONS,
LLC, formerly known as LOGISTICARE
SOLUTIONS, LLC, and ACE
TRANSPORTATION, INC.,

             Defendants-Appellants.

_____

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

In Docket No. 362587, defendants: Shatara Ayers (Ayers); ModivCare Solutions, LLC, formerly known as LogistiCare Solutions, LLC (ModivCare); and Ace Transportation, Inc. (Ace), appeal by leave granted[1] the trial court's order partially denying their motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) as to the negligence and vicarious liability claims filed against them by plaintiff, Jesse L. Davis, relating to Ayers's failure to secure plaintiff in his wheelchair while transporting him in a motor vehicle. In his cross-appeal, plaintiff challenges the portion of that order that granted summary disposition in favor of defendants with respect to plaintiff's negligence claim and vicarious liability claims relating to Ayers's operation of the motor vehicle. In Docket No. 363549, defendants appeal by leave granted[2] a later order that denied their motion for partial summary disposition pursuant to MCR 2.116(C)(10) as to the negligence claim filed against ModivCare by plaintiff. With respect to defendants' direct appeal in Docket No. 362587, we reverse. With respect to plaintiff's cross-appeal in Docket No. 362587, we affirm. In Docket No. 363549, we reverse.

## I. BACKGROUND

Plaintiff, who has been confined to a wheelchair since 2002, requested ModivCare, "a transportation broker for medical plans or hospitals throughout the country," to arrange for him to be transported to and from a medical appointment. ModivCare arranged for plaintiff to be transported by Ace, which is a private company that transports individuals who require, among other things, nonemergency medical transportation. Ayers, who worked for Ace at the time, picked up plaintiff from his home. Ayers secured plaintiff's wheelchair to the floor of the van she was driving, but she did not secure plaintiff to his wheelchair with a pelvic belt or shoulder restraint. Notably, plaintiff did not request that he be provided with either safety mechanism. While traveling to plaintiff's medical appointment, Ayers suddenly applied the van's brakes; according to Ayers, she was cut off by another vehicle that unexpectedly turned in front of her,

---

[1] *Davis v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered December 22, 2022 (Docket No. 362587).

[2] *Davis v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered December 22, 2022 (Docket No. 363549).

and she abruptly applied the brakes to avoid a collision. Plaintiff was ejected from his wheelchair and landed on the floor of the van. Plaintiff was injured and required extensive medical treatment.

Plaintiff sued,[3] alleging that Ayers was negligent for failing to secure him in his wheelchair and that Ayers negligently operated the van. Plaintiff also alleged that Ace and ModivCare were vicariously liable for Ayers's negligence under a theory of respondeat superior. Defendants moved for summary disposition, arguing plaintiff could not establish Ayers negligently operated the van. Defendants also argued Ayers did not have a duty to offer plaintiff safety devices and that requiring him to wear them would amount to discrimination. To support this, defendants cited *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-434; 824 NW2d 318 (2012), which held, in light of "[r]egulations promulgated by the United States Department of Transportation (DOT) to effectuate the purpose of the" ADA, Suburban Mobility Authority for Regional Transportation (SMART) and its bus drivers "had no duty to apply a restraint such as a seat belt or shoulder restraints on [the] plaintiff," who was wheelchair bound, when restraints for able-bodied passengers were neither offered nor available. After holding oral arguments, the trial court concluded a genuine issue of material fact did not exist as to whether Ayers negligently operated the van. The trial court granted summary disposition in favor of defendants on this claim. However, the trial court denied the remainder of defendants' motion for summary disposition because it found *Seldon* distinguishable from the facts at issue in this case because *Seldon* did not involve a private transportation company.

The trial court permitted plaintiff to file a third-amended complaint. In relevant part, the third-amended complaint alleged ModivCare was negligent in its retention of Ace. Defendants moved for partial summary disposition, arguing Ace and Ayers were independent contractors and it did not have a duty to investigate their competency and could not be held liable for their alleged negligence. Plaintiff argued a special relationship existed or, in the alternative, ModivCare voluntarily assumed a duty. After hearing oral arguments, the trial court concluded ModivCare and plaintiff had a special relationship, which gave rise to a duty, and denied defendants' motion for partial summary disposition.

Defendants sought leave to appeal the trial court's decisions to deny their motions for summary disposition. This Court granted leave and consolidated the appeals. *Davis v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered December 22, 2022 (Docket No. 362587); *Davis v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered December 22, 2022 (Docket No. 363549). Plaintiff cross-appealed the trial court's decision to grant summary disposition in favor of defendants with respect to his claim that Ayers negligently operated the van and on the accompanying vicarious liability claims against Ace and ModivCare.

## II. STANDARDS OF REVIEW AND GOVERNING LAW

"Whether one party owes a duty to another is a question of law reviewed de novo." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). We also review "de novo a trial court's

---

[3] Plaintiff's claims against State Farm Mutual Insurance Company were dismissed during the proceedings, and it is not a party to these appeals.

-3-

decision on a motion for summary disposition." *Bailey v Antrim County*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). "A de-novo review means we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) (quotation marks and citation omitted). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

The "traditional elements of a negligence action" are "(1) duty, (2) breach, (3) causation, and (4) damages. . . ." *Hannay v Dep't of Transp*, 497 Mich 45, 63; 860 NW2d 67 (2014) (quotation marks and citation omitted). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). "[A] negligence action may be maintained only if a legal duty exists that requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Graves v Warner Bros*, 253 Mich App 486, 492; 656 NW2d 195 (2002). A duty of care may arise by statute, by a contractual relationship, or from the common law. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012). "Overall, duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket Nos. 162907; 163430); slip op at 8 (quotation marks and citations omitted). While "[t]he existence of a duty is ordinarily a question of law," if "there are factual circumstance which give rise to a duty," "[t]he existence of those facts must be determined by a jury." *Farwell v Keaton*, 396 Mich 281, 286; 240 NW2d 217 (1976).

III.  ANALYSIS

A.  FAILURE TO SECURE PLAINTIFF TO WHEELCHAIR

Pursuant to binding caselaw, we conclude that Ayers did not have a duty to apprise Davis of the availability of restraints.[4]

Although it is well-settled that common carriers have a special relationship with passengers, *Hill*, 492 Mich at 666, Ayers cites *Seldon*, 297 Mich App at 432-434, to support the proposition that a duty did not exist to secure plaintiff in his wheelchair.  In *Seldon*, the plaintiff, who was wheelchair bound, was a passenger on a SMART bus.  *Id*. at 431.  Although the plaintiff's wheelchair was secured to the bus, the bus driver did not offer the plaintiff a shoulder restraint. *Id*. at 431-432.  The plaintiff was ejected from her wheelchair and was injured after the bus driver braked to stop at a yellow light.  *Id*. at 432.  The plaintiff filed suit against SMART and the bus driver; the trial court partially granted summary disposition in favor of the defendants, and the plaintiff appealed.  *Id*.  SMART argued that the trial court erred by denying its motion for summary disposition because SMART did not owe the "plaintiff a duty to advise her of the availability of a shoulder restraint."  *Id*.  This Court agreed:

> SMART had no legal duty to advise plaintiff of the availability of a shoulder restraint.  Regulations promulgated by the United States Department of Transportation (DOT) to effectuate the purpose of the Americans with Disabilities Act (ADA), 42 USC § 12101 *et seq*., prohibit a transit operator from requiring passengers in wheelchairs to use seat belts or shoulder restraints unless the operator requires the same of all passengers.  49 CFR § 37.1; 49 CFR § 37.5.  Because SMART buses are not equipped with such devices for all passengers, SMART could not have legally required plaintiff to use a shoulder restraint.  Requiring operators to inform passengers in wheelchairs of the availability of seat belts or shoulder restraints, in light of the unavailability of such devices for passengers not using wheelchairs, would impose a different duty on operators depending on whether a passenger is able-bodied or wheelchair-bound and runs contrary to the tenet that disabled passengers are to be treated the same as able-bodied passengers.
>
> Further, while appendix D, subpart G, § 37.165 to 49 CFR, part 37 states that an "entity's personnel have an obligation to ensure that a passenger with a disability is able to take advantage of the accessibility and safety features" on a vehicle, this obligation requires only that drivers or other personnel provide assistance with lifts, ramps, and devices to secure a wheelchair.  No regulation requires a transit operator to advise a passenger in a wheelchair of the availability

---

[4] Because the third-amended complaint was filed after defendants moved for summary disposition based on Ayers's failure to secure plaintiff in his wheelchair, we focus solely on the second-amended complaint when considering this issue on appeal.

of a seat belt or shoulder restraint. Likewise, SMART's internal policy did not require defendant Perry, the bus driver, to advise plaintiff that a shoulder restraint was available. Accordingly, SMART owed no duty to advise plaintiff of the availability of a shoulder restraint, and the trial court erred by concluding otherwise. [*Id*. at 433-434 (footnote omitted).]

Thus, *Seldon* turned on the fact that federal regulations promulgated by the DOT "prohibit a transit operator from requiring passengers in wheelchairs to use seat belts or shoulder restraints unless the operator requires the same of all passengers." *Id*. at 433. Importantly, 49 CFR § 37.5(a) provides: "*No entity* shall discriminate against an individual with a disability in connection with the provision of transportation service." (Emphasis added.) This Court held in *Seldon* that offering restraints *only* to wheelchair-bound is a form of discrimination prohibited by the ADA because it requires that wheelchair-bound people be treated differently than their able-bodied counterparts. While the DOT regulations distinguish between public and private entities, 49 CFR § 37.5(i), the fact of the matter remains no entity is permitted to discriminate against an individual with a disability when he or she is being transported by the entity, 49 CFR § 37.5(a). The logic in *Seldon* applies to this case. Like SMART, Ace and its employees are not permitted to discriminate against passengers who have disabilities when providing transportation services. Defendants provide in depth arguments assailing *Seldon*'s logic and apparently disagreeing with its holding, but *Seldon* is binding. See MCR 7.215(C)(1). The facts of *Seldon* are indistinguishable from the facts currently before us, and therefore, the trial court erred by denying Ayers's motion for summary disposition. It necessarily follows that the trial court erred by denying Ace and ModivCare summary disposition on plaintiff's related vicarious liability claims. See *Mueller v Brannigan Bros Restaurants & Taverns, LLC*, 323 Mich App 566, 581; 918 NW2d 545 (2018) ("Vicarious liability is premised on agency and the traditional doctrine that a master is responsible for the actions of the master's servant even if the master was not personally at fault.").

## B. NEGLIGENT DRIVING

Plaintiff argues the trial court erred by granting summary disposition in favor of defendants on plaintiff's claims Ayers negligently operated the van and Ace and ModivCare were vicariously liable for her negligence. We disagree.

When responding to a motion properly made pursuant to MCR 2.116(C)(10), "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). In *Seldon*, the plaintiff argued that the SMART bus driver operated the bus negligently, but this Court disagreed:

It is well settled that, absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel. Here, the record contains no evidence that [the defendant] operated the bus negligently. The only evidence of the bus's speed near the time that plaintiff was ejected from her wheelchair shows that [the defendant] was driving within the 35–mile–per–hour speed limit. Plaintiff contends that [the defendant] operated the bus negligently because Perry failed to anticipate that the green traffic signal light would change to yellow. This argument is untenable, however, because Perry did not act negligently

by traveling within the speed limit while the traffic signal light was green. Further, the mere fact that an injury occurred does not itself indicate that Perry operated the bus negligently. Accordingly, plaintiff failed to present evidence establishing a justiciable question of fact regarding whether Perry operated the bus negligently. [*Seldon*, 297 Mich App at 437-438 (citations omitted).]

The present case cannot be meaningfully distinguished from *Seldon*. Simply put, Davis presented absolutely no evidence that Ayers operated the vehicle negligently. Ayers, however, testified that she braked suddenly to avoid a collision with a vehicle that abruptly cut her off. Davis's argument that the trial court improperly found Ayers credible would have merit if Davis had provided contrary testimony that Ayers had not been cut off by another vehicle, but instead, Ayers's testimony was wholly uncontradicted. Indeed, to the extent that Davis saw and could recall what happened, his deposition testimony was consistent with that of Ayers. Davis was asked about how the accident happened:

*Q*. How did the accident happen?

*A*. If I'm recalling correct . . . *I think somebody jumped out in front of her*. Like I said, I wasn't looking forward. I was looking out my window. So I don't know exactly what it was. I know she was cussing about somebody pulling out in front of her. . . .

*Q*. So she was upset because someone jumped out in front of her, you said?

*A*. I don't know if I would call it upset but like somebody pull all of a sudden out, [sic] you might curse being startled or whatever. Something like that. Like what the—oh, you know.

Davis did not see the other vehicle, but he also did not know how fast Ayers was going and did not see if she was approaching a stoplight. However, Davis did testify that Ayers's speed did not cause the accident, testifying: "It wasn't so much that I think she was like speeding, I think it was just the abruptness of just slamming on the brakes."

To be clear, summary disposition with respect to this issue is not warranted because Ayers was credible. Indeed, we are aware that a "jury is free to credit or discredit any testimony." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001). However, Davis has the burden to establish that Ayers was negligent; Ayers does not have to establish that she was not negligent. See *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 281; 807 NW2d 407 (2011). Even if Ayers's testimony was discredited, there would be no basis upon which to conclude that she drove negligently. As this Court noted in *Seldon*, a sudden stop and the occurrence of an injury are insufficient to establish negligence. *Seldon*, 297 Mich App at 437-438. Therefore, summary disposition was proper.

We are not persuaded by Davis's reliance on *Price v Austin*, 509 Mich 938; 972 NW2d 246 (2022). In *Price*, the defendant truck driver purportedly "experienced a severe coughing fit and blacked out, causing the semi to cross over into the westbound lanes of M-46. The semi had made it almost to the westbound shoulder when it collided with plaintiff's vehicle." *Price v Austin*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2020 (Docket No.

346145), p 1. This Court affirmed the trial court's grant of summary disposition, but the Supreme Court reversed. *Price*, 509 Mich at 938. The Supreme Court noted that "[a]lthough some evidence supported the defendant-driver's testimony, only he could know what happened inside his truck that day or whether he had any reason to suspect that an imminent syncopal episode might warrant certain conduct." *Id*. The Court reasoned that "[b]ecause the defendant-driver's credibility was crucial to the success of his sudden-emergency defense, summary disposition should not have been granted." *Id*. In *Price*, the fact that the defendant allowed his truck to veer into oncoming traffic provided compelling evidence that he operated negligently, and his testimony that a health crisis was the true cause of the accident rebutted this evidence. In the present case, however, there is no positive evidence of negligence for Ayers to rebut. Therefore, *Price* is not on point, and *Seldon* is controlling.

## C. NEGLIGENT HIRING

Defendants argue the trial court erred by concluding a special relationship existed between ModivCare and plaintiff. We agree.

"Michigan has not recognized a duty requiring an employer to exercise care in the selection and retention of an independent contractor." *Reeves v Kmart Corp*, 229 Mich App 466, 471, 475-476; 582 NW2d 841 (1998). Nevertheless, after finding that a "special relationship" of trust existed between plaintiff and ModivCare, the trial court held the relationship warranted imposing a legal duty on ModivCare as to its selection of Ace.

Michigan recognizes a distinction between "passive" and "active" forms of negligence. *Chelik v Capitol Transp, LLC*, 313 Mich App 83, 91; 880 NW2d 350 (2015). The passive form, "nonfeasance, . . . is passive inaction or the failure to actively protect others from harm," while the active form, "misfeasance, . . . is active misconduct causing personal injury." *Id*. In Michigan, parties generally do not have a duty to protect others unless there is "a special relationship based on control." The reason for "imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Id*. at 91 (quotation marks and citation omitted). "The duty to protect is imposed upon the person in control because he is best able to provide a place of safety." *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 26; 780 NW2d 272 (2010), quoting *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988).

In this case, there is no evidentiary or legal basis to support the trial court's conclusion that ModivCare had a "special relationship" with Davis. We know of no precedent that would support a conclusion that a party responsible for making transportation arrangements thereby forms a special relationship with the person being transported. Critical to this sort of "special relationship" is control; the person to whom the duty is owed must have in some way relinquished the ability to protect themselves to the person who owes the duty. Nothing in the record suggests that ModivCare exerted this sort of control over Davis. Moreover, there are few, if any, similarities to be gleaned between the Davis's relationship to ModivCare and the other sorts of relationship which have given rise to such duties; these relationships include the physician-patient relationship, the victim-rescuer relationship, and the landlord-tenant relationship. See *Madley v Evening News*

*Ass'n*, 167 Mich App 338, 341-342; 421 NW2d 682 (1988).[5]  This was not a relationship based on confidence and trust; ModivCare simply made arrangements for third parties to transport Davis to nonemergency medical appointments.  Therefore, the court's conclusion that these parties had a "special relationship" was erroneous.

As an alternative basis for affirming, plaintiff argues that ModivCare voluntarily assumed a duty to ensure the quality of services provided by Ace, which necessarily required ModivCare to perform the duty "with some degree of skill and care."[6]  "Under the common law, as a general rule, there is no duty that obligates one person to aid or protect another."  *Dawe*, 485 Mich at 25 (quotation marks and citation omitted).  However, the Restatement Torts, 2d, § 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

This rule has long been recognized in Michigan.  See e.g., *Smith v Allendale Mut Ins Co*, 410 Mich 685, 715; 303 NW2d 702 (1981) ("Section 324A provides that an actor who undertakes, gratuitously or for consideration, to render services to another . . . may in certain circumstances be liable to foreseeable third persons for negligence.") (quotation marks and citation omitted).  However, in *Fultz v Union-Commerce Assocs*, 470 Mich 460, 464; 683 NW2d 587 (2004), our Supreme Court cautioned that § 324A is not to be "invoked uncritically or without regard to limiting principles within our caselaw."

In Michigan, to establish a defendant engaged in an undertaking sufficient to create liability pursuant to § 324A, the evidence must show the defendant intended to undertake the service as a benefit to the recipient of the service.  See *Smith*, 410 Mich at 710-719.

> While an undertaking which may give rise to liability under the rule of § 324A may be gratuitous as well as contractual, the evidence must show that the actor assumed an obligation or intended to render services for the benefit of another.

---

[5] Published opinions of this Court that were issued before November 1, 1990 are not binding, but they may be considered for their persuasive value.  MCR 7.215(J)(1); *Jackson v Director of Dep't of Corrections*, 329 Mich App 422, 428 n 5; 942 NW2d 635 (2019).

[6] While it was not addressed, plaintiff did raise this issue in the trial court, thereby preserving it for appellate review.  See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

> Evidence demonstrating merely that a benefit was conferred upon another is not sufficient to establish an undertaking which betokens duty. Persons pursuing their own interests often benefit others in the process. Accordingly, where a plaintiff seeks to prove an undertaking by conduct which benefits another and that conduct is consistent with a primary purpose on the part of the actor to benefit himself, the plaintiff must offer additional evidence to create a jury question whether there was an undertaking to render services and hence a duty to one who might foreseeably be injured by the actor's failure to perform the undertaking with reasonable care. [*Id*. at 717-718.]

Therefore, for ModivCare to have a duty to plaintiff pursuant to "the voluntary assumption of a duty doctrine," ModivCare must have intended to provide services for plaintiff's benefit. There is no evidence to support ModivCare intended to provide services solely for plaintiff's benefit. Indeed, it appears ModivCare received compensation for scheduling the transportation services. Additionally, plaintiff never alleged in the trial court that ModivCare "assumed an obligation or intended to render services for the benefit of another," i.e., the individuals for whom it scheduled transportation services. See *id*. at 711-712. The fact that ModivCare may have been conferred a benefit to plaintiff does not, by itself, "establish an undertaking which betokens duty." See *id*. Indeed, as already stated: "[P]ersons pursuing their own interests often benefit others in the process." *Id*. ModivCare did not take affirmative steps to aid others, see *Sweet v Ringwelski*, 362 Mich 138, 142-143; 106 NW2d 742 (1961); *Sponkowski v Ingham County Rd Comm*, 152 Mich App 123, 125-128; 393 NW2d 579 (1986), and did not make statements to support it intended to aid others, see *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 205-206; 544 NW2d 727 (1996). Because plaintiff failed to provide facts to support "there was an undertaking [on the part of ModivCare] to render services" for the benefit of individuals like himself, *Smith*, 410 Mich at 712, "the threshold element of duty" under § 324A is lacking, see *id*. at 710.[7]

---

[7] Plaintiff also argues ModivCare can be held liable for the negligence of its independent contractors because Ace and Ayers were performing inherently dangerous activities by transporting patients who are confined to wheelchairs. This argument was not raised before the trial court rendering it unpreserved. *Glasker-Davis*, 333 Mich App at 227. This Court recently held the plain-error rule does not apply to civil cases, *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 4-5, and we find no reason to overlook the preservation requirements in this case, *id*. at ___; slip op at 3. Plaintiff also argues he is entitled to an adverse inference jury instruction because ModivCare failed to produce certain evidence during discovery. However, as noted by defendants, the trial court never decided whether plaintiff would be entitled to an adverse jury instruction. It would be improper for this Court to decide this in the first instance. Indeed, we are an error-correcting Court, and this is generally not the appropriate forum for arguments to be initially decided. See *Apex Laboratories Int'l, Inc v Detroit (On Remand)*, 331 Mich App 1, 10; 951 NW2d 45 (2020). The trial court can decide the issue on remand, if it is necessary to do so. See *Gottesman v City of Harper Woods*, 508 Mich 942, 942; 964 NW2d 365 (2021); *ER Zeiler Excavating, Inc v Valenti Trobec Chandler, Inc*, 270 Mich App 639, 649; 717 NW2d 370 (2006).

## IV. CONCLUSION

In Docket No. 362587, we reverse the trial court's conclusion that there was a genuine issue of material fact regarding whether Ayers had a duty to offer plaintiff pelvic or shoulder restraints, and we affirm the trial court's conclusion that there was no genuine issue of material fact regarding whether Ayers negligently operated the van. In Docket No. 363549, we reverse the trial court's conclusion that there was a genuine issue of material fact regarding whether ModivCare negligently retained Ace to provide plaintiff's transportation services. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado