# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL CHELIK,

        Plaintiff-Appellant/Cross-Appellee,

v

CAPITOL TRANSPORT, L.L.C.,

        Defendant,

and

SPARROW HOSPITAL,

        Defendant-Appellee/Cross-
Appellant.

FOR PUBLICATION
October 27, 2015
9:05 a.m.

No. 322349
Ingham Circuit Court
LC No. 11-001266-NO

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

SAAD, J.

## I. NATURE OF THE CASE

After plaintiff broke his arm in a fall and after defendant Sparrow Hospital[1] administered medical treatment, Sparrow advised plaintiff that it could do no more for him, recommended that he see a specialist the next day, and discharged plaintiff from the hospital. Though plaintiff preferred to stay the night at the hospital, a doctor advised him that the hospital facilities could not be used for mere overnight rest and therefore a cab was called to take him back to his hotel. Hospital personnel took plaintiff by wheelchair to the waiting room, where plaintiff waited for his cab, by himself. Upon arrival at the hospital, the cab driver assisted plaintiff out of the wheelchair and into the cab whereupon plaintiff fell once again and injured his other arm. Thereafter, plaintiff saw doctors for his broken arms. Plaintiff sued Sparrow for his injuries and notably did not sue Sparrow for medical malpractice either for Sparrow's treatment or discharge of plaintiff, but rather claimed that Sparrow had breached a common-law duty to assist plaintiff with his transportation after Sparrow discharged him from the hospital. After the close of

---

[1] Because defendant Capitol Transport, L.L.C. was dismissed from the suit before trial began, Sparrow Hospital is the only defendant at issue in this appeal.

-1-

plaintiff's proofs, the trial court granted Sparrow's motion for directed verdict on the grounds that Sparrow has no common-law duty to assist a discharged patient, such as plaintiff, with transportation from the hospital and that, were the court to find such a duty, there was no evidence that Sparrow's alleged breach was the proximate cause of plaintiff's damages.

For reasons which we explain below, we hold that Michigan law does not impose a duty upon a hospital to assist a discharged patient with transportation. And, because there is no duty, we need not address the causation issue, but we note that, were we to decide this issue, we would hold that plaintiff failed to prove that any of his damages were caused by Sparrow.

## II. BASIC FACTS

In November 2010, plaintiff lived in New Jersey, worked for Disney in its Broadway musical touring division, and, as a member of the touring production, performed at the Wharton Center on the campus of Michigan State University in East Lansing. After an evening performance, plaintiff, who weighed 345 pounds, fell while walking to his car. The fall broke plaintiff's left elbow and left forearm.

It was near midnight by the time plaintiff was admitted into the emergency department at Sparrow. Unable to do anything for plaintiff immediately, the Sparrow staff molded a splint for his left arm and told him to see an orthopedic surgeon the following day. Plaintiff testified that he did not want to be discharged because he was tired; he did not want to travel the 20 or 25 minutes to his hotel and preferred to sleep at the hospital. The doctor responded that the hospital could not use a bed as a place to spend the night and ultimately discharged plaintiff at 5:55 a.m. The medical records show that the doctor's decision to discharge plaintiff was based on the following findings: plaintiff's condition had improved, plaintiff's pain was controlled, an exam of plaintiff showed him to be "stable," and a repeat exam also showed that plaintiff was "stable." Furthermore, the nurse in charge conducted a "fall risk assessment" and, after watching plaintiff stand up by himself and walk across the room, concluded that plaintiff passed the assessment. When discharged, plaintiff was offered a wheelchair, which he used.

A technician in the emergency department pushed plaintiff in the wheelchair to the emergency room waiting area and then left. Soon thereafter, the cab driver arrived and pushed plaintiff to the vehicle. Plaintiff was concerned with the driver's ability to effectively assist, but the driver reassured him that he has done this before and "don't worry about it." After clearing out room in the front passenger seat, plaintiff asked the driver if the wheelchair was locked, and the driver replied that "Yeah, it's locked" and "I got you." With the assistance of the driver, plaintiff pushed himself to a standing position, but he immediately felt wobbly and went back to sit down. But plaintiff felt that the chair was no longer in place because the driver had already moved it away, so instead of falling back, plaintiff pushed himself into the front of the vehicle and fell into the passenger compartment's foot well on his right side. This latest fall resulted in injuries to plaintiff's right elbow. X-rays taken later that day revealed that plaintiff's right elbow was now broken and his left arm had the same injuries as before.

A few days later, plaintiff underwent surgery for his left arm, and two days after that, surgery was performed on his right elbow. These surgeries left plaintiff in a precarious state because he could not use either of his arms. After returning to his home in New Jersey, plaintiff

saw an orthopedic surgeon, who prescribed six weeks of physical therapy for the right arm. After that six-week session was complete, the plan was for therapy to focus on the more severely injured left arm. After the therapy on the right arm, plaintiff was able to do "normal" things with it, but he nevertheless could not work anymore because of his inability to use his left arm.

In his suit, plaintiff alleged negligence on the part of Sparrow in failing to assist him into the taxi cab. Notably, he did not claim malpractice regarding his treatment or discharge at Sparrow. At the close of plaintiff's proofs, Sparrow moved for directed verdict on two grounds. First, Sparrow argued that it had no duty to assist a discharged patient into a waiting vehicle. Second, Sparrow argued that plaintiff failed to present any evidence of causation. Specifically, the evidence indicated that plaintiff could no longer work because he could no longer use his *left* arm and elbow. But Sparrow claimed that plaintiff never produced any medical testimony explaining how plaintiff's *right* elbow injury—the injury at issue from the cab incident—contributed to his inability to work. After hearing arguments from both sides, the trial court granted Sparrow's motion based on a lack of causation evidence.

Plaintiff moved for reconsideration. The trial court denied plaintiff's motion but stated that "[a]lthough the Court articulated its reasoning on the record as to why a directed verdict would have been appropriate regarding causation and damages, the primary issue was that Sparrow did not owe Plaintiff a duty." The court noted that the evidence established that Sparrow did not have a policy requiring employees to assist discharged patients into awaiting vehicles and there also was no evidence that Sparrow assumed the responsibility of assisting such patients into vehicles.

## III. ANALYSIS

On appeal, plaintiff's sole argument is that the trial court erred in its determination that Sparrow did not have a duty to assist plaintiff into the taxi cab. We disagree.

In a negligence analysis, the question of whether a duty exists is a question of law that we review de novo. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Additionally, decisions on a motion for directed verdict are reviewed de novo as well. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003). When deciding on a motion for directed verdict, the evidence and all legitimate inferences are reviewed in the light most favorable to the nonmoving party. *Id.* Such a motion "should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Id.*

> To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. [*Loweke*, 489 Mich at 162.]

Regarding the element of duty, "[a] negligence action may only be maintained if a *legal* duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Riddle v McLouth Steel Products* Corp,

-3-

440 Mich 85, 96; 485 NW2d 676 (1992) (emphasis added); see also Prosser & Keeton, Torts (5th ed), § 53, p 356 (defining "duty" as "an obligation, to which *the law* will give recognition and effect, to conform to a particular standard of conduct toward another.") (emphasis added). Because the question of whether the common law, as a matter of public policy, ought to impose a duty upon one for the benefit of another necessarily involves the balancing of interests and societal costs and prudence calls for consistency in application, this is a question of law, which courts, not juries decide. See *In re Certified Question from Fourteenth Dist Court of Appeals of Tex*, 479 Mich 498, 505; 740 NW2d 206 (2007); *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002); *Charles Reinhart Co v Winiemko*, 444 Mich 579, 601; 513 NW2d 773 (1994); Prosser & Keeton, § 37, at p 236 (stating that deciding on the existence of a duty requires "reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court."). As explained by our Supreme Court,

> Because the ultimate inquiry in determining whether a duty should be imposed involves balancing the social benefits of imposing that a duty with the social costs of imposing a duty, we cannot decide whether a duty should be imposed without assessing the competing policy considerations. We must be concerned with whether it is appropriate public policy to impose liability. In fixing the bounds of duty, not only logic and science, but policy play an important role. There is a responsibility to consider the larger social consequences of the notion of duty and to correspondingly tailor that notion so that the illegal consequences of wrongs are limited to a controllable degree. In determining whether a duty exists, courts must be mindful of the precedential effects of their rulings, and limit the legal consequences of wrongs to a controllable degree. Moreover, any extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs. [*In re Certified Question*, 479 Mich at 518-519 (quotation marks, citations, brackets, and ellipses omitted).]

Furthermore, if left to juries to decide, it invariably would produce differing results even when confronted with factually indistinguishable circumstances, *Moning v Alfono*, 400 Mich 425, 435; 254 NW2d 759 (1977), and this would be an untenable situation, as people could never know with any certainty if they were legally under any particular duty.

Factors for a court to consider when considering whether to impose a duty include the following: "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 661; 822 NW2d 190 (2012) (citations, quotation marks, and brackets omitted). Although the relationship of the parties has been described as the most important factor, *In re Certified Question*, 479 Mich at 505, the foreseeability of the harm is just as important. That is because "'[b]efore a duty can be imposed, there must be a relationship between the parties *and* the harm must have been foreseeable.'" *Hill*, 492 Mich at 661, quoting *In re Certified Question*, 479 Mich at 509 (emphasis added). Consequently, "[i]f either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors." *Hill*, 492 Mich at 661.

Here, plaintiff asserts that Sparrow was negligent through nonfeasance, which is the passive inaction or failure to actively protect others from harm, and not misfeasance, which is the active misconduct causing personal injury. *Williams v Cunningham Drug Stores, Inc*, 429 Mich

495, 498; 418 NW2d 381 (1988). That is, plaintiff alleges that Sparrow had a duty to assist or aid plaintiff but failed to do so. Under Michigan common law, generally there is no duty for one person to aid or protect another, absent a special relationship based on control. *Id.* at 498-499. "The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Id.* Here, Sparrow had no control over plaintiff. Sparrow already discharged plaintiff when plaintiff attempted to get into a taxi cab parked outside the hospital. While Sparrow requested the cab at plaintiff's request, this does not constitute "control" over plaintiff. As a result, at the time of the injury, there was no special relationship between Sparrow and plaintiff, and clearly Sparrow had no control over plaintiff. Therefore, we hold that plaintiff has failed to establish that Sparrow had any duty to act on behalf of plaintiff at the time plaintiff sustained his injury when he fell into the cab.

Furthermore, the analysis on the foreseeability factor is fatal to plaintiff's claim as well. Again, plaintiff was evaluated before being discharged, and it was determined that his condition had improved, his pain was controlled, and two exams showed that he was "stable." Additionally, plaintiff had passed a "fall risk assessment" after being able to stand up and walk by himself across the room. These facts reveal that plaintiff was in better condition than he was when he arrived at the hospital and was capable of ambulating from a seated position. In light of these facts, it was not reasonably foreseeable that plaintiff would injure himself while being assisted into a cab. Consequently, we hold that Sparrow did not have a legal duty to assist plaintiff into an awaiting vehicle. Therefore, the trial court properly held that Sparrow had no duty to plaintiff and correctly granted a directed verdict.[2]

A holding to the contrary would appear to be unprecedented. Plaintiff has failed to identify any caselaw in Michigan, or any other state, that provides that a hospital has a legal duty to assist its discharged patients into vehicles, and our research has not uncovered such precedent. In fact, what caselaw exists directly supports the conclusion that no such duty exists. See, e.g., *Cameron v New York*, 322 NYS2d 562, 566; 37 AD2d 46 (1971) ("[T]he law does not impose upon a hospital the continuing duty to exercise a parental role over discharged patients."). The reason is clear. It would be an unreasonable imposition upon hospitals and health care providers for the law to require that they aid every properly discharged patient with transportation. The legal obligations thus imposed would be endless, unpredictable, and therefore unreasonable. A health care provider has no common-law legal duty to assist a discharged patient with transportation.[3]

---

[2] We also note that much of plaintiff's testimony focused on the fact that he thought he was not as capable of ambulating as Sparrow had determined before being discharged. However, to the extent that this suggests misdiagnosis, this would be a medical malpractice claim, not the ordinary negligence claim that is the issue in the instant case.

[3] We also note that much of plaintiff's testimony focused on the fact that he thought he was not as capable as Sparrow had determined before being discharged. However, to the extent that Sparrow did misevaluate plaintiff's condition at discharge, that would be a medical malpractice

Affirmed.  Sparrow, as the prevailing party, may tax costs pursuant to MCR 7.219.[4]

/s/ Henry William Saad
/s/ Mark T. Boonstra

---

claim—not the ordinary negligence claim that is the issue in the instant case.  Accordingly, the fact that plaintiff avers that he was not stable and not able to keep his balance after being discharged is not relevant for the pertinent analysis.

Although we have decided this case on the dispositive issue of duty, we note that even if a duty existed, reversal would not be required because, as the trial court alternatively ruled, there was no evidence that the injuries plaintiff suffered at Sparrow caused any of the work-loss damages he sought.  Those damages, instead, were solely caused by plaintiff's prior injury to his left arm.

[4] Sparrow filed a "cross-appeal" and in its raised issue claims that plaintiff's brief on appeal is inadequate to present his issue to this Court because it simply incorporated by reference plaintiff's prior submission to this Court in Docket No. 319518, where Sparrow was the appellant and sought leave to appeal the trial court's denial of its motion for summary disposition.  Notwithstanding Sparrow's label to the contrary, this issue is not a "cross-appeal." It does not appeal or challenge anything that happened at the trial court.  As such, we simply have treated it as an alternative argument for this Court to rule against plaintiff in *his appeal*. However, we decline to deem plaintiff's appeal waived or abandoned on this basis, especially in light of the fact that plaintiff did provide a thorough briefing in his reply brief.