*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RODNEY WHITESIDE,

        Plaintiff-Appellant,

v

EARLENE M. REINWAND,

        Defendant-Appellee.

UNPUBLISHED
March 21, 2024

No. 363919
Oakland Circuit Court
LC No. 2021-188388-NI

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

In this negligence action, plaintiff appeals by right the trial court's opinion and order granting defendant's motion for directed verdict after a jury trial, determining that plaintiff failed to establish the elements of duty, causation, or breach, all necessary to show that defendant was negligent. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arose after plaintiff Rodney Whiteside fell off a ladder while changing a lightbulb on defendant Earlene M. Reinwand's property, who is the aunt of plaintiff's wife. Plaintiff and his wife conducted maintenance around defendant's property on a weekly basis between May 2020 and November 2020 in exchange for compensation. On November 7, 2020, plaintiff and his wife visited defendant to assist her with the property. In order to change a lightbulb, plaintiff acquired an aluminum extension ladder from a pole barn; however, because of the older design it lacked "feet" at the bottom, impacting its stability and safety.

Evidence presented at trial showed that plaintiff positioned the ladder against the pole barn, approximately one foot to the left of the lightbulb, which was 14 feet from the ground. Defendant stood to the left of the ladder, with one hand wrapped around each side to stabilize the bottom. Plaintiff removed the existing lightbulb without issue; however, when plaintiff attempted to replace the lightbulb, he had difficulty securing it in the socket, and the ladder subsequently shifted and fell to the ground. Both plaintiff and defendant were injured. Plaintiff attributed the fall to defendant walking away and failing to secure the ladder, causing it to shift and become

imbalanced. Defendant stated that the accident occurred because plaintiff's unnatural movements while standing at the top of the ladder caused it to slide and fall.

After plaintiff's presentation of proofs, defendant moved for a directed verdict, contending that: (1) plaintiff maintained the burden of proof, at trial, to establish if or how defendant was at fault for the ladder shifting, and the occurrence of an incident or injury did not sufficiently demonstrate duty or fault under the negligence doctrine; and (2) defendant owed plaintiff no duty to continually hold the ladder because her conduct did not increase the hazard to plaintiff. In response, plaintiff argued that the only two relevant considerations were duty and breach, and any detail related to causation was not before the jury per the parties' stipulated jury instructions and verdict form. Moreover, defendant failed to fulfill her promise to plaintiff to continuously hold the ladder, which plaintiff relied on for safety during the fulfillment of his task.

Ultimately, the trial court granted defendant's motion for directed verdict, concluding that (1) defendant owed plaintiff no duty based on the relationship between the parties, the foreseeability of the harm, and relevant policy considerations; (2) the record established that defendant voluntarily secured the ladder and there was nothing to indicate defendant's conduct exacerbated any risk to plaintiff or that plaintiff relied on defendant to secure the ladder; and (3) a jury could not reasonably conclude defendant breached any duty when plaintiff neglected to demonstrate defendant walked away from the ladder or otherwise contributed to the ladder falling. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to grant a directed verdict de novo. *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013), aff'd 497 Mich 337 (2015). "When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor." *Id*. (quotation marks and citation omitted). Any conflict in the evidence is resolved in favor of the nonmoving party to determine whether a question of fact existed. *Cacevic v Simplimatic Engineering Co (On Remand)*, 248 Mich App 670, 679; 645 NW2d 287 (2001). "A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Id*. "If reasonable jurors could reach conclusions different than this Court, then this Court's judgment should not be substituted for the judgment of the jury." *Id*.

## III. ANALYSIS

Plaintiff argues that the trial court erred when it granted defendant's motion for directed verdict because: (1) under the negligence doctrine, defendant owed a duty to plaintiff to continually hold the ladder after defendant voluntarily secured the bottom of the ladder; (2) there were unresolved factual questions concerning whether defendant's conduct increased the risk of harm to plaintiff; and (3) the court improperly shifted the evidentiary burden to plaintiff regarding causation. We disagree and affirm the trial court's order.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal

duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 508; 991 NW2d 230 (2022). Consequently, a defendant cannot be held liable in a suit unless the defendant owed the plaintiff a legal duty. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Whether a defendant owes a plaintiff a duty of care is a question of law decided by the trial court. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012).

In evaluating whether a legal duty exists, courts examine a number of factors, including the relationship of the parties, the foreseeability of the harm, the degree of certainty of injury, the closeness of connection between the conduct and injury, the moral blame attached to the conduct, the policy of preventing future harm, and the burdens and consequences of imposing a legal duty. *In re Certified Question (Miller v Ford Motor Co)*, 479 Mich 498, 505; 740 NW2d 206 (2007). "The most important factor to be considered is the relationship of the parties." *Id*. "If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465; 683 NW2d 587 (2004). In other words, a person who has no duty who nevertheless chooses to act is bound to use reasonable care so as not to increase the danger to the plaintiff. *Id*.; see also *Hill*, 492 Mich at 660 ("Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others").

The trial court did not err when it concluded that defendant did not owe plaintiff a legal duty. Concerning the relationship between the parties, it is undisputed that defendant and plaintiff maintained a familial relationship and plaintiff occasionally performed property maintenance for defendant in exchange for compensation. However, there was no "special relationship" between the parties imposing any sort of duty, such as that of an innkeeper or common carrier. See *Hill*, 492 Mich at 666 ("We have recognized that certain types of special relationships, such as common carriers and their passengers, innkeepers and their guests, and doctors and patients, justify the imposition of a duty because a person entrusts himself or herself to the control of another person"); *Dougherty v Detroit*, 340 Mich App 339, 347; 986 NW2d 467 (2022) ("A special relationship exists only when one party 'entrust[ed] [themselves] to the protection and control of another and, in doing so, that party loses the ability to protect [themselves]' ") (citation omitted); *Chelik v Capitol Transp, LLC*, 313 Mich App 83, 91; 880 NW2d 350 (2015) ("Under Michigan common law, generally there is no duty for one person to aid or protect another, absent a special relationship based on control"). Concerning the foreseeability of the harm, it was undisputed that the aluminum extension ladder lacked "feet," which compromised the ladder's stability. Thus, it was foreseeable to plaintiff that the ladder could shift and fall if not used properly.

While plaintiff criticizes defendant's and the trial court's consideration of how the underlying incident occurred in light of the parties' stipulation regarding the omission of the causation element, a trial court may consider the closeness of connection between the conduct and injury in its determination of whether defendant owed plaintiff any duty. See *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; ___ NW2d ___ (2023) (confirming that courts may consider additional factors to determine whether there is a duty, including the closeness of connection between the conduct and injury). Moreover, it would be unreasonable to impose a duty requiring a person to secure a ladder on his or her respective property when the injured party was aware of the instrument's defects, the task associated with the ladder was optional, and the injured party failed to look for an alternative method to complete the task. See *Chelik*, 313 Mich App at 92-93

(providing that in instances when the legal obligations imposed would be "endless, unpredictable, and therefore unreasonable," it would be unreasonable to impose a duty). Plaintiff, as opposed to defendant, was in the best position to prevent the harm by refusing to use the ladder when he recognized the risk because of the lack of feet. See *Roberts v Salmi*, 308 Mich App 605, 626-627; 866 NW2d 460 (2014) (considering which party was in the best position to avoid the harm caused in its determination of whether a limited legal duty should be imposed). The trial court aptly noted it was also unclear, based on plaintiff's narrative of the fall, exactly why or how the ladder shifted, as plaintiff did not see defendant holding the ladder nor did plaintiff observe defendant walk away. Accordingly, defendant did not owe plaintiff any specified legal duty, and thus, defendant was solely obligated to act in a manner that did not increase the hazard or risk to plaintiff.

Viewing the evidence in the light most favorable to plaintiff, it is clear defendant voluntarily assumed the task of securing the bottom of the ladder while plaintiff ascended to replace a lightbulb on defendant's pole barn. While plaintiff testified that his use of the ladder was predicated on defendant continually securing the bottom of the ladder, plaintiff never confirmed defendant's presence during his ascent nor did plaintiff see defendant walking away from the ladder. While there was conflicting testimony regarding whether defendant warned plaintiff regarding the ladder's defects, plaintiff knew the ladder was designed and built without feet, which was common in older, aluminum extension ladders, and he recognized that the feet were instrumental in ensuring the ladder was balanced. Ultimately, defendant's conduct of securing the ladder during plaintiff's ascent minimized, rather than exacerbated, the danger presented by the ladder.

Both parties agreed that plaintiff did not have difficulty ascending the ladder and removing the original lightbulb, and it was only after plaintiff attempted to thread the new lightbulb into the socket that the ladder shifted. Defendant testified that she saw the top of the ladder starting to slide because plaintiff was twisting and turning to the right on the ladder; plaintiff was initially facing the pole barn with both feet positioned on the top of the ladder when he initially removed the lightbulb. Defendant stated she instructed plaintiff to make his way back down, and as plaintiff began his descent, he turned and "jumped to the right side of the ladder and landed on the ground" feet first. Plaintiff, comparatively, testified that when he attempted to place the new lightbulb, he felt the ladder became unstable as the bottom "kicked out," and "[he] heard . . . the bottom of the ladder scrape against the cement, and then [he] just went straight down." Plaintiff's wife stated that she saw defendant securing the ladder before plaintiff's fall, but she turned away before the incident occurred.

While the evidence must be viewed in light most favorable to plaintiff, the record supports defendant's contentions that she continually secured the ladder throughout the underlying incident. In addition to defendant testifying regarding her injuries as a result of the ladder's fall, plaintiff's wife stated that she tended to defendant's injuries as defendant was lying on the ground, and she helped defendant into her residence and wrapped defendant's head with a bandage. Plaintiff's wife also stated that she saw defendant holding the ladder before plaintiff's fall and she did not see defendant walk away before she heard the ladder tumble to the ground. For his part, plaintiff asserted that he relied on defendant to secure the ladder and he attributed the ladder fall to defendant's failure to continually hold the ladder. However, plaintiff simultaneously contended that he did not confirm defendant secured the ladder in the first place nor did he see defendant walk away. Because plaintiff only assumes that defendant must have walked away for the ladder

-4-

to become unstable, plaintiff's testimony regarding the cause of the underlying fall is nothing more than mere speculation. See *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 7; 972 NW2d 860 (2021) (stating that speculation and conjecture are not sufficient to create material issues of fact for trial). Ultimately, plaintiff opted to use the unsafe ladder and the activity of climbing the ladder was dangerous before defendant volunteered to maintain it, and plaintiff cannot demonstrate how defendant's conduct otherwise contributed to his fall.

Plaintiff also argues that the trial court improperly shifted the burden regarding causation to plaintiff despite the parties stipulating in their submitted jury instructions and verdict form that the issue of whether defendant's alleged negligence was the proximate cause of plaintiff's damages was not a matter to be considered by the jury. "A stipulation . . . is an agreement, admission or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter incident thereto. Its purpose is generally stated to be the avoidance of delay, trouble, and expense." *Staff v Johnson*, 242 Mich App 521, 535; 619 NW2d 57 (2000) (quotation marks and citation omitted). "Stipulations of fact are sacrosanct, whereas stipulations of law do not bind a court." *Wolf v Mahar*, 308 Mich App 120, 126-127; 862 NW2d 668 (2014) (quotation marks and citations omitted).

Fundamentally, regardless of any alleged stipulation regarding the element of causation, the court did not require the plaintiff to establish the element of causation nor did the court base its ruling on any theory of causation. In its opinion and order granting defendant's motion for directed verdict, the trial court extensively discussed the matter related to duty and breach, and stated that "the jury could not reasonably conclude, without more on the record, that defendant breached a duty where there is no evidence that defendant let go of the ladder." The court also explained: "And when I say but for, again, it's difficult for this Court to separate breach and causation. Although you all may have agreed to causation, when I say but for, this Court cannot find that there was a breach, the breach here being that [defendant] let go of the ladder."

Regardless of plaintiff's protestations, the trial court was not obligated to abide by the parties' purported stipulation regarding the element of causation because it constituted a stipulation of the law, as it concerned the legal requirements to establish a prima facie case of negligence. See *Wolf*, 308 Mich App at 126-127 (noting stipulations of law do not bind the court). Thus, the trial court appropriately determined that plaintiff was nevertheless required to demonstrate the cause of the ladder fall to establish a claim of negligence. See *Holman v Farm Bureau Gen Ins Co of Mich*, 511 Mich 974; 990 NW2d 364, 366 (2023) (to establish a prima facie case of negligence, "a plaintiff *must* prove that . . . the defendant's breach was a proximate cause of the plaintiff's damages") (quotation marks and citation omitted; emphasis added). Additionally, there is no alternative stipulated agreement, or any other document in the record, that indicates the parties clearly and unequivocally waived any element of a negligence claim, and the jury instructions and verdict form do not contain any waiver language regarding causation. See *Patel v Patel*, 324 Mich App 631, 634; 922 NW2d 647 (2018) ("Magic words are unnecessary to effectuate a valid waiver, but a waiver must be explicit, voluntary, and made in good faith").

"[A] valid waiver may be shown by "express declarations or by declarations that manifest the parties' intent and purpose or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id*. (quotation marks and citations omitted). The absence of causation language in the jury instructions is insufficient to demonstrate

waiver, particularly when the verdict form, explicitly provided the following questions (1) was defendant negligent, (2) was plaintiff negligent, (3) did plaintiff's negligence cause or contribute to plaintiff's injuries, and (4) using 100 percent as the total, enter the percentage of negligence attributed to plaintiff and defendant individually. The verdict form represented a modified version of M Civ JI 66.03, which addressed comparative negligence in personal injury actions, and the doctrine of comparative negligence, by definition, distributes responsibility according to the proportionate fault of the parties, which is impossible to establish without presenting how and to what extent each party's conduct contributed to the underlying incident.

Defense counsel additionally provided, during the lower court proceedings, that the parties never agreed plaintiff was not required to show how the accident occurred, rather, they solely agreed the parties would not dispute whether plaintiff's injuries stemmed from his fall. Furthermore, "[j]ury instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them," which necessarily includes causation; an essential element in a prima facie negligence claim. *Cox ex rel Cox v Bd of Hosp Managers for Flint*, 467 Mich 1, 8; 651 NW2d 356 (2002) (quotation marks and citation omitted). Ultimately, the trial court properly considered whether plaintiff was able to sufficiently describe the events leading to the underlying incident, and its decision did not violate any alleged stipulation or waiver. See *Taylor v Kent Radiology*, 286 Mich App 490, 518; 780 NW2d 900 (2009) (opining when the plaintiff was unable to adequately explain how his fall off the ladder transpired, "mere consistency with the known facts is not enough; the theory must be deducible from those facts or it is mere conjecture. And when a party's theory of causation is merely conjecture, the trial court has a duty to direct a verdict on that issue") (citation omitted). Because plaintiff failed to demonstrate any error in the trial court's decision to grant defendant's motion for directed verdict to warrant reversal, he is not entitled to relief.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray