*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LYNETTE LOVE,

        Plaintiff-Appellee/Cross-Appellant,

v

ALASKA AIRLINES, INC.,

        Defendant-Appellant/Cross-Appellee,

and

WAYNE COUNTY AIRPORT AUTHORITY,

        Defendant,

and

DETROIT AIRLINES NORTH TERMINAL
CONSORTIUM, also known as DANTEC,

        Defendant/Cross-Appellee.

UNPUBLISHED
January 09, 2025
3:39 PM

No.  364791
Wayne Circuit Court
LC No.  20-000200-NO

Before:  LETICA, P.J., and BOONSTRA and MARIANI, JJ.

BOONSTRA, J. (*concurring in part and dissenting in part*).

I agree with the majority that the trial court properly granted summary disposition in favor of defendant Alaska Airlines, Inc. (defendant) on plaintiff's premises-liability claim.  I respectfully disagree, however, with the majority's decision to affirm the trial court's denial of defendant's motion for summary disposition with respect to plaintiff's negligence claim.

To begin, the trial court's entire rationale, as reflected in a short-form order entered without oral argument, was as follows:

Plaintiff's negligence claim survives as there remains a question of fact whether the AA policy of traversing the conveyor belt in the face of safer options constituted general negligence.

Candidly, no one knows what this means. It is undisputed that the recommended policy was not to traverse a conveyor belt in the manner that plaintiff chose. Rather, as the majority notes, the recommended policy was to traverse one's own workstation conveyor belt (thereby avoiding any risk of activation). The trial court thus appears to have erred by construing the policy as one of "traversing the conveyor belt in the face of safer options," when in fact the safer option would have been to follow the recommended policy. The trial court also did not explain what it believed to be "safer options," and the parties have identified none other than following the recommended policy (which plaintiff did not do).

In addition, there is no factual question about how plaintiff was injured. She chose, contrary to the recommended policy, to traverse a conveyor belt other than her own, and in doing so apparently miscommunicated with another worker who activated her conveyor belt, thus causing plaintiff to fall. The injury was therefore caused by a condition of the land. But, as the majority acknowledges, defendant, as a non-exclusive tenant, lacked the possession and control necessary to sustain plaintiff's premises-liability claim against it.

Generally speaking, I of course agree that there can be situations in which a general-negligence claim may arise based on a distinct, common-law duty to act with due care and not unreasonably endanger others. However, this is not such a situation. In this case, any assertions of negligence by defendant fall within the context of premises liability (for which this defendant is not responsible) or, alternatively, are claims of a failure to act to prevent plaintiff from being in a position where she might be injured, which is not actionable against defendant.

For example, in opposing defendant's motion for summary disposition in the trial court, plaintiff argued that defendant "never installed electric eyes," "[n]or did it purchase inexpensive crossover ladders, or seek to change the setup of the work area." Similarly, plaintiff argues on appeal that defendant "fail[ed] to request or petition to redesign of the work area" and "fail[ed] to implement safety equipment." In my judgment, those allegations clearly fall within the ambit of premises liability and, presumably, they are actions that the majority acknowledges "overlap[] with her premises-liability [claim] and [are] correspondingly precluded." See *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012), overruled in part on other grounds by *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich. 95, 1 N.W.3d 44 (2023) ("If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury.")

Plaintiff additionally opposed summary disposition in the trial court by arguing that there was a "failure to train, instruct, supply agents with materials, among other things" constituting "general negligence in the operation of a workplace environment." The majority obliges that line of attack simply by summoning—in the abstract—the general common-law duty to act with due care.

But this is not an abstract situation. Plaintiff's injuries arose from a condition of the land. The majority's reasoning simply enables plaintiff to circumvent the law of premises liability by arguing that some inaction, at some earlier point in time, may have, in plaintiff's own words, "contributed to her injuries" by failing to prevent her from being in a position where she might be injured by a condition of the premises. But plaintiff's convoluted logic serves only to undermine the law of premises liability. Because plaintiff's injuries indisputably arose from a condition of the premises, any liability lies with the premises-possessor; defendant is not independently liable under a negligence theory, absent some "active" or "direct conduct" that caused the injury. See *Jahnke v Allen*, 308 Mich App 472, 476; 865 NW2d 49 (2014) (noting that the allegation that the defendant violated the general duty to act with due care in creating the condition on the land "does not transform the premises liability action into one alleging ordinary negligence); *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 16; 930 NW2d 393 (2018) (holding that claim arising from injuries sustained when unassembled cardboard boxes fell from a stack of pallets sounded solely in premises liability, not ordinary negligence, absent an allegation that someone "actively knocked the pallets over or engaged in direct conduct that caused the pallets to fall onto plaintiff").[1]

The majority salvages plaintiff's negligence claim by offering a supposed distinction in the caselaw. But, upon inspection, that distinction proves to be one without a difference, at least as it applies to this case. Specifically, the majority rejects defendant's argument that plaintiff's negligence claim fails because it is not based on any overt act carried out by defendant. The majority finds it instructive that the caselaw frequently (and unsurprisingly, in my judgment) presents situations in which a plaintiff asserts both a premises liability and a negligence claim against a premises-possessor. The majority thus maintains that the "overt act" line of inquiry is used in such cases to determine when a general-negligence claim can be brought against a premises possessor for injuries arising on its premises.

But while that may be true, our caselaw recognizes that the "overt acts" inquiry is also used to determine when a general-negligence claim can be brought against a third-party non-premises-possessor. Thus, a third-party non-premises-possessor (like defendant in this case) also is not subject to a negligence claim absent an overt act. In *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495; 418 NW2d 381 (1988), our Supreme Court noted "a distinction between misfeasance, or active misconduct causing personal injury, and nonfeasance, which is passive inaction or the failure to actively protect others from harm." *Id*. at 498. The Court recognized that "[t]he common law has been slow in recognizing liability for nonfeasance because the courts are reluctant to force persons to help one another and because such conduct does not create a new risk

---

[1] To the extent that plaintiff's claim is based on defendant's failure to explicitly forbid the use of the "crossover" method of traversing conveyor belts, this is only another method of arguing that defendant had created the dangerous condition on the land—it would not transform plaintiff's claim into one for ordinary negligence. See *Wilson v BRK, Inc*, 328 Mich App 505, 512; 938 NW2d 761 (2019) (holding that the plaintiffs argument that the defendant created a dangerous condition on the land by directing disabled customers to use an allegedly hazardous step sounded in premises liability, not ordinary negligence).

of harm to a potential plaintiff. Thus, as a general rule, there is no duty that obligates one person to aid or protect another." *Id*. at 498-499 (footnotes omitted).

In *Johnson v A & M Custom Built Homes of West Bloomfield, LPC*, 261 Mich App 719, 722-723; 683 NW2d 229 (2004), this Court further clarified that a third-party, non-premises possessor (in that case, a subcontractor) could be held liable for an injury that occurred on a job site under a theory of "active negligence." In that case, the defendant subcontractor had affirmatively acted to install toe boards on a roof, and the plaintiff was injured when an allegedly-negligently-installed toe board failed to stop the plaintiff from falling. Although the defendant subcontractor had no duty to install the toe boards or otherwise make the premises safe, the Court held that when a defendant "actually performs an act, it has the duty to perform the act in a nonnegligent manner." *Id*. at 723.

More recently, in *Chelik v Capitol Transport, LLC*, 313 Mich App 83; 880 NW2d 350 (2015), this Court held that "[a] health-care provider has no common-law legal duty to assist a discharged patient with transportation," again noting the distinction between "nonfeasance, which is passive inaction or the failure to actively protect others from harm," and "misfeasance, which is active misconduct causing personal injury." *Id*. at 91.

A review of plaintiff's allegations against defendant in this case reveal that they fall within the category of nonfeasance or passive inaction, rather than misfeasance or active misconduct causing personal injury. Moreover, although plaintiff, in her brief on appeal, refers generally to defendant's "conduct," her descriptions uniformly are of alleged *failures* to act, not of active negligence. Consequently, they run afoul of the rule established in *Williams* and *Chelik*. that only claims of active negligence resulting in personal injury are cognizable under the law.

*Williams* and *Chelik* do recognize an exception to this general rule where a "special relationship" exists between a plaintiff and a defendant. As the Supreme Court in *Williams* described:

> [A] common carrier may be obligated to protect its passengers, an innkeeper his guests, and an employer his employees.[2] The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety." [*Williams*, 429 Mich at 499.]

As the Court in *Williams* further noted, "[o]wners and occupiers of land are in a special relationship with their invitees and comprise the largest group upon whom an affirmative duty to protect is imposed." This is why plaintiff, in this case, may properly look to the premises-possessor for her claimed injuries, as it had the requisite control and the resulting duty to act. But defendant is not the premises-possessor and lacks the requisite control, as the majority acknowledges. It is instead a third-party non-premises-possessor as to whom there is no claim of active negligence.

---

[2] It is undisputed that defendant was not plaintiff's employer.

The trial court therefore should have granted summary disposition in favor of defendant on plaintiff's negligence claim.

I also find instructive this Court's unpublished opinion in *Batchelder v Echelon Homes*, unpublished per curiam opinion of the Court of Appeals, issued November 18, 2021 (Docket No. 353265) at *3.[3] ("This state's jurisprudence recognizes a distinction between 'passive' and 'active' forms of negligence."). In *Batchelder*, the plaintiff slipped and fell after performing plumbing work at a new-construction home. He sued multiple parties, including the owner-general contractor and several subcontractors, including Cindav Construction, Inc (CCI). Upon a determination that CCI was not "the possessor" of the property, the trial court entered a no-cause judgment in favor of CCI. The Court held:

> Given that plaintiff's claim against CCI concerned *nonfeasance* with regard to dangerous conditions on the land, we cannot conclude that the trial court erred by holding that the claim sounded *exclusively* in premises liability. [*Id*. at *3 (emphasis added).]

Similarly in this case, plaintiff's allegations against defendant are solely of nonfeasance or passive negligence, not of misfeasance or active negligence. Consequently, plaintiff's claims sound exclusively in premises liability.

For these reasons, I respectfully dissent from the majority's affirmance of the trial court's order denying defendant's motion for summary disposition of plaintiff's negligence claim, and would instead reverse the trial court in that respect and remand for entry of an order granting summary disposition in favor of defendant. I otherwise concur in the majority opinion.


/s/ Mark T. Boonstra

---

[3] Unpublished opinions lack precedential value, but we may consider their reasoning persuasive. See *Patel v FisherBroyles*, *LLP*, 344 Mich App 264, 277 n 4; 1 NW3d 308 (2022).